IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARROWHEAD PHARMACEUTICALS, INC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 25-1130 (GBW) |
| IONIS PHARMACEUTICALS, INC., | ) ) ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF
DEFENDANT IONIS PHARMACEUTICALS, INC.'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

OF COUNSEL:

Jessamyn S. Berniker
Thomas S. Fletcher
Kathryn S. Kayali
Michael Xun Liu
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

*Attorneys for Defendant*

October 6, 2025

## TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ........................................................ 2

III.    SUMMARY OF ARGUMENT ................................................................................ 2

IV.     STATEMENT OF FACTS ...................................................................................... 3

V.      ARGUMENT .......................................................................................................... 4

        A.      Arrowhead's Anticipatory Suit Should Be Dismissed. ................................. 4

                1.      Arrowhead's Lawsuit Is Anticipatory ................................................. 5

                2.      Exercising Jurisdiction Would Not Vindicate the
                        Objectives of the Declaratory Judgment Act. ..................................... 7

                3.      The Remaining "Convenience Factors" Also Favor
                        Dismissal. .......................................................................................... 10

        B.      Alternatively, The Court Should Transfer this Case to C.D. Cal. ............... 13

                1.      This Suit Could Have Been Brought in C.D. Cal. ............................. 13

                2.      The Private Interest Factors Strongly Favor Transfer. ...................... 15

                        a.      Arrowhead's choice of Delaware weighs
                                minimally. .............................................................................. 15

                        b.      Ionis's preference to litigate in the Central District
                                of California weighs in favor of transfer. ............................. 16

                        c.      The infringement has significant connections with
                                C.D. Cal. ................................................................................ 17

                        d.      C.D. Cal. is more convenient for both Ionis and
                                Arrowhead. ............................................................................ 17

                        e.      More potential witnesses are in the C.D. Cal.
                                subpoena power. .................................................................... 18

                        f.      The location of the relevant books and records
                                favors C.D. Cal. ..................................................................... 18

                3.      The Public Interest Factors Also Strongly Favor Transfer. .............. 19

a.    Trial in C.D. Cal. will be more practical and efficient. ................................................................ 19

b.    Court congestion in Delaware favors transfer. ...................... 19

c.    The C.D. Cal. court has a local interest in deciding this case. .............................................................................. 20

VI.    CONCLUSION ......................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

## CASES

*ACCO Brands USA LLC v. Performance Designed Prods. LLC*,
2024 WL 181545 (D. Del. Jan. 17, 2024)................................................................14

*Amperex Tech. Ltd. v. Maxell, Ltd.*,
2021 WL 4398804 (D.N.J. Sept. 27, 2021), *aff'd*, 2022 WL 135431 (Fed. Cir. 2022).............6

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l Inc.*,
2017 WL 1536394 (D. Del. April 27, 2017)........................................................16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..............................................................................14

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
2022 WL 16921988 (D. Del. Nov. 14, 2022) ........................................................9

*Commc'ns Test Design, Inc. v. Contec, LLC*,
952 F.3d 1356 (Fed. Cir. 2020)..........................................................4, 5, 7, 8

*Davox Corp. v. Digital Sys. Int'l, Inc.*,
846 F. Supp. 144 (D. Mass. 1993) ................................................................10

*Dex Prods., Inc. v. Houghteling*,
2006 WL 1751903 (N.D. Cal. June 23, 2006) ......................................................14

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*,
350 F. Supp. 2d 620 (E.D. Pa. 2004) ..............................................................6

*EchoStar Satellite LLC v. Finisar Corp.*,
515 F. Supp. 2d 447 (D. Del. 2007)................................................................8

*Elecs. for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005)....................................................................8

*Express Mobile, Inc. v. Web.Com Grp., Inc.*,
2020 WL 3971776 (D. Del. July 14, 2020) ........................................................16

*Ford Motor Co. v. United States*,
811 F.3d 1371 (Fed. Cir. 2016)....................................................................7

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
824 F.2d 953 (Fed. Cir. 1987)....................................................................8

*Google LLC v. Sonos, Inc.*,
   2020 WL 6822880 (N.D. Cal. Nov. 20, 2020) ...................................................................6

*HPF, LLC v. Nu Skin Enters., Inc.*,
   1999 WL 782573 (E.D. Pa. Sept. 28, 1999) ....................................................................10

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009)...................................................................................12, 18

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009).........................................................................................20

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221, 1223 (Fed. Cir. 2011)........................................................................13, 15

*Ionis Pharmaceuticals, Inc. v. Arrowhead Pharmaceuticals, Inc.*,
   Case No. 25-cv-08609-HDV-AGR (C.D. Cal.)...............................................................2, 3

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*,
   910 F.3d 1199 (Fed. Cir. 2018).........................................................................................15

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)...........................................................................13, 15, 18, 19

*Linex Technologies, Inc. v. Hewlett-Packard Co.*,
   2013 WL 105323 (D. Del. Jan. 7, 2013) ....................................................................16, 17

*Memory Integrity, LLC v. Intel Corp.*,
   2015 WL 632026 (D. Del. Feb. 13, 2015) ........................................................................15

*Mentor Graphics Corp. v. Quickturn Dersign Sys., Inc.*,
   77 F. Supp. 2d 505 (D. Del. 1999) ...................................................................................16

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
   518 F.3d 897 (Fed. Cir. 2008).....................................................................................10, 12

*Minn. Mining & Mfg. Co. v. Norton Co.*,
   929 F.2d 670 (Fed. Cir. 1991).............................................................................................8

*Mitek Sys., Inc. v. USAA*,
   2012 WL 3777423 (D. Del. Aug. 30, 2012) .....................................................................17

*Nalco Co. v. AP Tech Grp. Inc.*,
   2014 WL 3909114 (D. Del. Aug. 8, 2014) .......................................................................17

*Nortek, Inc. v. Molnar*,
   36 F. Supp. 2d 63 (D.R.I. 1999)........................................................................10

*OpenTV, Inc. v. Netflix, Inc.*,
   2014 WL 1292790 (D. Del. March 31, 2014)....................................................16

*Pacific Atl. Trading Co. v. M/V Main Express.*,
   758 F.2d 1325 (9th Cir. 1985) ....................................................................13, 14

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
   126 F. Supp. 3d 430 (D. Del. 2015)............................................................17, 18

*Peloton Interactive, Inc. v. Lululemon Athletica Canada Inc.*,
   2022 WL 4585812 (S.D.N.Y. Sept. 29, 2022)....................................................6

*Pennwalt Corp. v. Purex Indus., Inc.*,
   659 F. Supp. 287 (D. Del. 1986).......................................................................15

*Pro Sports Inc. v. West*,
   639 F. Supp. 2d 475 (D.N.J. 2009)...................................................................14

*Serco Servs. Co., L.P. v. Kelley Co.*,
   51 F.3d 1037 (Fed. Cir. 1995)...........................................................5, 6, 7, 8, 10

*Shenzhen City Sanhu Tech. Co. v. Albanese.*,
   2023 WL 7167009 (E.D.N.Y. Oct. 31, 2023).............................................14, 15

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..........................................................................................15

*SKF Condition Monitoring, Inc. v. SAT Corp.*,
   2008 WL 706851 (S.D. Cal. Feb. 27, 2008) .....................................................13

*Smart Audio Techs., LLC v. Apple, Inc.*,
   910 F. Supp. 2d 718 (D. Del. 2012)............................................................13, 18

*Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*,
   2019 WL 652862 (E.D. Cal. Feb. 15, 2019).......................................................7

*Sudden Valley Supply LLC v. Ziegmann*,
   2013 WL 2099440 (E.D. Mo. May 14, 2013) ...................................................15

*Symantec Corp. v. Zscaler, Inc.*,
   2017 WL 3262246 (D. Del. July 31, 2017) .......................................................19

*Telebrands Corp. v. martFIVE, LLC*,

2013 WL 4675558 (D.N.J. Aug. 30, 2013) ...............................................................6

*TGL Golf Holdings, LLC v. LA Golf Partners, LLC*,
2025 WL 1638353 (D. Del. June 9, 2025)......................................................6, 7, 8, 9

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
917 F.2d 1574 (Fed. Cir. 1990)...............................................................................14

*W.R. Berkley Corp. v. Niemela*,
2017 WL 4081871 (D. Del. Sept. 15, 2017)....................................................19, 20

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)....................................................................................................4

*Woodbolt Distrib., LLC v. Natural Alternatives Int'l, Inc.*,
2013 WL 247041 (D. Del. Jan. 23, 2013)..................................................... passim

## OTHER AUTHORITIES

28 U.S.C. § 1391(b), (c).............................................................................................14

28 U.S.C. § 1400(b).....................................................................................................14

28 U.S.C. § 1404(a).................................................................................2, 13, 15, 20

28 U.S.C. § 2201(a) ("Declaratory Judgment Act").................................... passim

Fed. R. Civ. P. 45(c)...........................................................................................12, 18

## I.    INTRODUCTION

This is a textbook anticipatory lawsuit.  Arrowhead, the declaratory judgment plaintiff, filed this action just hours before it expected Ionis to sue for patent infringement in California. Arrowhead is on the verge of commercializing a product that squarely infringes Ionis's patent. Last month, Ionis's CEO wrote to Arrowhead in hopes of resolving the issue without litigation but explained that if the parties did not make progress, Ionis would sue for infringement on September 11th in the Central District of California.  Ex. A (Sept. 3, 2025 Letter).  That forum is Arrowhead's corporate home and a short drive from Ionis's home in nearby Carlsbad, California.  Arrowhead "acknowledge[d] receipt" of the letter and claimed they were "evaluating it."  Ex. E.  But the next time Ionis heard from Arrowhead, it was not in the form of a return phone call or email—but rather when Arrowhead filed its complaint on the eve of Ionis's stated deadline, in a different forum. Ionis promptly filed its complaint in California the next day, September 11th, as promised.

This scenario is not new.  Courts routinely dismiss anticipatory declaratory suits like this in favor of the complaint the patentee said it would file.  This Court should exercise its discretion to do the same—especially where, as here, the relevant witnesses and documents largely reside in California, where both companies are headquartered.  In contrast, neither company maintains a place of business in Delaware, and no anticipated witnesses or documents reside there.  The law is clear: the Declaratory Judgment Act is not a vehicle for racing to the courthouse.  This case should be dismissed so that Ionis's co-pending litigation in California can proceed.

Alternatively, this Court should transfer the case to the Central District of California for the convenience of parties and witnesses.  Both Ionis and Arrowhead are headquartered in southern California, where they employ hundreds of people.  Because many of the relevant witnesses and documents are located in southern California—and none are located in Delaware—litigation in the Central District of California would be far more practical and expedient.

1

## II.     NATURE AND STAGE OF PROCEEDINGS

This is an action for declaratory judgment of non-infringement and invalidity of U.S. Patent No. 9,593,333 ("the '333 patent"), D.I. 1-1.  In a September 3, 2025 letter, Ionis told Arrowhead that it intended to sue for infringement of the '333 patent in the Central District of California on September 11th, unless the parties could resolve the dispute.  Ex. A.  To preempt Ionis's choice of forum, Arrowhead filed this action the day before, September 10th.  The next day, Ionis filed an action for infringement in the Central District of California, as promised.  *Ionis Pharmaceuticals, Inc. v. Arrowhead Pharmaceuticals, Inc.*, Case No. 25-cv-08609-HDV-AGR (C.D. Cal.).

## III.     SUMMARY OF ARGUMENT

Ionis asks the Court to exercise its discretion to decline jurisdiction of this declaratory judgment suit or, in the alternative, transfer the case to the Central District of California.

(1)  Arrowhead's complaint is an "anticipatory" declaratory judgment lawsuit that it filed only after Ionis notified Arrowhead of its intention to sue on a particular day in the Central District of California.  Dismissal would be consistent with the purpose of the Declaratory Judgment Act, which is not a tool for forum shopping or jurisdictional gamesmanship.  Further, the Central District of California would be the far more appropriate and convenient forum because the underlying dispute is between two companies headquartered in southern California, neither of which has any place of business in Delaware.

(2) Alternatively, if the Court does not dismiss Arrowhead's anticipatory action, it should transfer this suit to the Central District of California pursuant to 28 U.S.C. § 1404(a).  Arrowhead's principal place of business is located within the Central District of California.  Likewise, Ionis is based nearby in the Southern District of California, and some of its employees reside in the Central District.  Accordingly, the Central District of California would be far closer to the witnesses and evidence that will be at issue in this case.

## IV.    STATEMENT OF FACTS

Ionis and Arrowhead are both pharmaceutical companies headquartered and primarily operating out of southern California.  Declaration of Karen K. Horning, Ph.D. ("Horning Decl.") ¶ 4; Ex. C (Ionis 10-K) at 1; Ex. D (Arrowhead 10-K) at 1.  Building off years of research, Ionis developed a breakthrough therapy called Tryngolza® to treat familial chylomicronemia syndrome ("FCS"), a disorder that leads to dangerously high triglyceride levels.  As the first approved therapy for FCS, Tryngolza® inhibits the genetic material that encodes a protein called ApoCIII and improves the body's ability to break down triglycerides.  In recognition of Ionis's invention, the U.S. Patent Office issued the '333 patent, which covers the use of ApoCIII inhibitors to treat FCS.

Instead of paving its own path, Arrowhead copied Ionis's approach of using an ApoCIII inhibitor to treat FCS.  Arrowhead now seeks regulatory approval for a product called plozasiran that, when used as prescribed, would infringe the '333 patent.  To protect its patent rights, Ionis's CEO sent a letter on September 3, 2025 to notify Arrowhead of its infringement and offer to discuss a potential resolution.  Ex. A.  The letter made clear, however, that "[u]nless [the parties] are able to resolve this dispute first, Ionis intends to seek relief for Arrowhead's blatant patent infringement by *filing suit against Arrowhead in the United States District Court for the Central District of California on September 11, 2025* to enforce its patent rights."  Ex. A (emphasis added).

Arrowhead responded to Ionis's letter, stating that "[we] are evaluating it."  Ex. E.  But Arrowhead never engaged in any meaningful dialogue with Ionis.  Instead, armed with the knowledge of Ionis's impending lawsuit, Arrowhead raced from one coast to the other and filed a lawsuit in this Court on September 10th—the day before Arrowhead would face suit in its own backyard.  D.I. 1.  The next day, Ionis sued Arrowhead as it had said it would, on Arrowhead's "home turf" in the Central District of California.  *Ionis Pharmaceuticals, Inc. v. Arrowhead Pharmaceuticals, Inc.*, Case No. 25-cv-08609-HDV-AGR (C.D. Cal.); Ex. B.

V.    **ARGUMENT**

A.    **Arrowhead's Anticipatory Suit Should Be Dismissed.**

The Court should dismiss Arrowhead's declaratory judgment action and allow the litigation in the Central District of California to proceed.  As the Federal Circuit has explained, district courts have "broad discretion to refuse to entertain a declaratory judgment action."  *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361-62 (Fed. Cir. 2020) (citation omitted).  The text of the Declaratory Judgment Act is intentionally permissive and not compulsory: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may declare* the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a) (emphasis added).  As the Supreme Court has recognized, federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).[1]

Arrowhead's complaint is a textbook example of an "anticipatory" declaratory judgment lawsuit over which courts typically decline jurisdiction.  Dismissing Arrowhead's complaint would further the objectives of the Declaratory Judgment Act, which is intended to promote certainty and avoid delay—not facilitate forum shopping and jurisdictional gamesmanship.  And there can be no serious dispute that California is by far the more appropriate venue for this dispute.  This is a dispute between two companies headquartered in southern California, neither of which has any place of business in Delaware.  The relevant witnesses and documents are predominantly in southern California.  The facts here closely parallel those in the litany of prior cases where judges of this Court have dismissed anticipatory lawsuits.

---

[1] Federal Circuit precedent controls this issue.  *Commc'ns Test Design*, 952 F.3d at 1362.

1.      **Arrowhead's Lawsuit Is Anticipatory.**

When a party files an anticipatory suit, it is well-settled that courts pay no deference to the fact that it is filed "first," and can and should use their broad discretion to dismiss such suits. *Commc'ns Test Design*, 952 F.3d at 1365 (affirming dismissal of first filed anticipatory suit); *Woodbolt Distrib., LLC v. Natural Alternatives Int'l, Inc.*, 2013 WL 247041, *2 (D. Del. Jan. 23, 2013). "[A] suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distrib.*, 2013 WL 247041 at *4 (citation omitted). That is precisely what happened here—Arrowhead filed suit on September 10, 2025, on receipt of Ionis's express statement that it would sue in the Central District of California the next day.

The fact pattern presented here is not new. Patentees frequently alert potential defendants to their infringing conduct in hopes of resolving the issue without litigation. And they often specify the date on which they will resort to litigation if no compromise is forthcoming. Then, in an attempt to avoid the patentee's choice of forum, the infringer preemptively sues in a different one. In these circumstances, the anticipatory suit is dismissed unless considerations of convenience to the parties and witnesses require otherwise. For example, in *Communications Test Design*, the Federal Circuit found it "clear that CTDI's [declaratory judgment action] was anticipatory" because the patentee "told CTDI that it would file suit if [the accused infringer] did not confirm by September 18, 2018, that it was willing to discuss the terms of a potential license." 952 F.3d at 1363. It affirmed the Eastern District of Pennsylvania's dismissal of the anticipatory case. *Id.* at 1365. The Federal Circuit did the same in *Serco Servs. Co., L.P. v. Kelley Co.*, affirming the dismissal of Serco's anticipatory declaratory judgment action when it was filed after Serco received a letter from the patentee that stated: "Unless you confirm to us by September 20, 1993 that Serco will discontinue the manufacture or sale of any infringing device, [patentee] will

commence a law suit to enjoin further infringement in addition to seeking other available remedies." 51 F.3d 1037, 1038, 1040 (Fed. Cir. 1995).

Consistent with the Federal Circuit's guidance, courts in this district and elsewhere routinely dismiss such anticipatory suits. In *Woodbolt Distribution*, the court dismissed the first-filed declaratory judgment action because it was filed after the patentee sent a letter warning the accused infringer that its infringement suit "would be filed in the Southern District of Texas on December 9, 2011, absent a resolution of the dispute." 2013 WL 247041 at *4. Because this "strongly suggest[ed] that a patent infringement suit from [the patentee] was 'imminent' within the meaning of the first-filed rule exception," the court found "that the first-filed rule should not be applied." *Id.* Again, this time in a trademark dispute, the court in *TGL Golf Holdings, LLC v. LA Golf Partners, LLC* dismissed a declaratory judgment complaint that was filed after the accused infringer received a letter "mak[ing] clear that [the trademark owner] would escalate the dispute if [the accused infringer] did not cease and desist its alleged infringement '*prior* to January 7.'" 2025 WL 1638353, *3 (D. Del. June 9, 2025). Because the accused infringer "raced to this courthouse to prevent [the owner] from filing suit in its preferred forum in California," the court "decline[d] to exercise jurisdiction." *Id.* at *6. *See also*, *e.g.*, *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F. Supp. 2d 620 (E.D. Pa. 2004) (dismissing anticipatory declaratory judgment patent action); *Peloton Interactive, Inc. v. Lululemon Athletica Canada Inc.*, 2022 WL 4585812 (S.D.N.Y. Sept. 29, 2022) (same); *see also*, *e.g.*, *Google LLC v. Sonos, Inc.*, 2020 WL 6822880 (N.D. Cal. Nov. 20, 2020) (staying anticipatory declaratory judgment patent action); *Amperex Tech. Ltd. v. Maxell, Ltd.*, 2021 WL 4398804 (D.N.J. Sept. 27, 2021) (declining jurisdiction over anticipatory declaratory judgment patent action and transferring to second-filed forum), *aff'd*, 2022 WL 135431 (Fed. Cir. 2022); *Telebrands Corp. v. martFIVE, LLC*, 2013 WL

4675558 (D.N.J. Aug. 30, 2013) (same); *Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*, 2019 WL 652862 (E.D. Cal. Feb. 15, 2019) (same).

There can be no reasonable dispute that Arrowhead's declaratory judgment action is an anticipatory suit. Ionis identified the specific time and place that it would file suit in no uncertain terms—Thursday, September 11, 2025 in the Central District of California. Like the declaratory judgment defendants in *Communications Test Design*, *Serco*, *Woodbolt*, and *TGL Golf*, Ionis informed Arrowhead of the precise deadline to resolve the dispute, and going beyond the defendants in several cases, even specified the exact date it would file suit and the venue where it would do so. Arrowhead acknowledged in its complaint that it knew Ionis would file suit in the "Central District of California on September 11, 2025." D.I. 1-8 at 2; *see also* D.I. 1, ¶ 31. The filing of this declaratory judgment action one day before is transparently an attempt to beat Ionis to the courthouse, and Arrowhead's suit should be dismissed in keeping with the decisions in *Communications Test Design*, *Serco*, *Woodbolt*, and *TGL Golf*.

### 2. Exercising Jurisdiction Would Not Vindicate the Objectives of the Declaratory Judgment Act.

When exercising its discretion regarding whether to hear a declaratory judgment action, the Court also should consider "whether hearing the case would serve the objectives for which the Declaratory Judgment Act was created." *Ford Motor Co. v. United States*, 811 F.3d 1371, 1378 (Fed. Cir. 2016) (internal quotations omitted). Here, the answer is a resounding "no." Refusing to exercise jurisdiction over Arrowhead's complaint is the only course that aligns with the purposes of the Declaratory Judgment Act. Allowing this case to proceed would only incentivize gamesmanship and forum shopping, which are directly at odds with the statute's purpose.

*First*, exercising declaratory judgment jurisdiction here would not vindicate the purpose of the Declaratory Judgment Act, which "in patent cases is to provide the allegedly infringing party

relief from *uncertainty* and *delay* regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (emphasis added). In other words, the Declaratory Judgment Act is designed to address a situation where a patentee puts an alleged infringer on notice of infringement but then delays filing suit. *See EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 449, 452 (D. Del. 2007) (action for declaratory relief proper when patentee had placed alleged infringer on notice for more than two years without filing suit). In that circumstance, the alleged infringer faces uncertainty about if and when the patentee will file suit, and so the alleged infringer is permitted to take matters into their own hands and start the case via a Declaratory Judgment suit. *See Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673-74 (Fed. Cir. 1991). But here, like in other cases where anticipatory suits have been dismissed, *see Commc'ns Test Design*, 952 F.3d at 1363, *Serco Servs.*, 51 F.3d at 1038, Arrowhead faced no uncertainty or delay. In its letter to Arrowhead, Ionis disclosed the *precise* date and *exact* venue where it would file its complaint not long after reaching out to Arrowhead. Ex A at 2. The facts here are far removed from situations where there is ambiguity about "whether there will be legal proceedings at all," or where the alleged infringer faced a "looming specter of litigation" that could extend indefinitely. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346-47 (Fed. Cir. 2005). Ionis could not have made its imminent legal action against Arrowhead more specific or concrete.

*Second*, dismissal is appropriate because the Declaratory Judgment Act is not supposed to be a tool for "forum shopping" and "procedural fencing." *TGL Golf Holdings*, 2025 WL 1638353 at *5. As a Delaware court explained, the purpose of the Declaratory Judgment Act is "*not* to deprive a natural plaintiff of its preferred forum or to guarantee the declaratory plaintiff's own choice of venue." *Id.* (emphasis added). In *TGL Golf Holdings*, a Delaware court dismissed the first-filed declaratory judgment because the alleged trademark infringer, faced with an imminent

lawsuit, "ran to the courthouse, and then raced to serve the suit, rather than engage in any continued dialogue, [which] suggests that its goal was to win a race to a preferred courthouse, rather than just to get clarity for its business operations." *Id.* at *4. Arrowhead deployed the same tactic here. Arrowhead knew where and when Ionis planned to sue it, so it raced to file its complaint in this Court before Ionis filed suit in Arrowhead's home forum. Arrowhead's lawsuit is not an effort to get "clarity for its business operations" because Ionis had already provided that clarity. Arrowhead's gambit is a transparent attempt to forum shop, and its "conduct weighs in favor of dismissing this lawsuit altogether." *Id.* at *1. As this Court has recognized, "[i]f the Court lacked the discretion to dismiss such a declaratory judgment action, nothing would prevent these or future parties from leveraging the Declaratory Judgment Act to play jurisdictional games that waste judicial and party resources." *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 WL 16921988, *5 (D. Del. Nov. 14, 2022).[2]

*Third*, "[w]here a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *TGL Golf Holdings*, 2025 WL 1638353 at *5 (quotations omitted). That is the situation here. The two cases are mirror images, both covering plozasiran's infringement of the '333 patent. Arrowhead's request for relief is no broader than Ionis's California suit, and its only purpose is attempting to defeat liability by preventing Arrowhead's home district from hearing the case. In situations like these, "where a putative defendant files a declaratory action whose only

---

[2] In *Cisco Systems*, this Court emphasized that the Declaratory Judgment Act should not be used to forum shop, as Arrowhead does here. The Court, however, ultimately denied the patentee's motion to dismiss because the parties were already engaged in six different litigations involving the same or similar patents, and at least one of those cases was already pending in Delaware. *Id.* at *5. No such considerations militate against dismissal here.

purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment," and "courts 'take a dim view' of such actions." *Id.* (quotations omitted).

*Fourth*, exercising jurisdiction over Arrowhead's action would create a strong disincentive for patentees to contact alleged infringers before filing suit. Ionis reached out to Arrowhead before filing suit, inviting Arrowhead to a dialogue. Ex. A. Rather than engaging, Arrowhead tried to preempt Ionis's choice of forum through this suit. If patentees like Ionis risk losing their choice of forum when they contact an alleged infringer, they would have no choice but to file a complaint before attempting to engage in discussions with the other side, which would waste judicial and party resources. Courts in this Circuit and across the country have repeatedly instructed that "the [Declaratory Judgment] Act should not be applied to encourage [] plaintiffs to file suit rather than resolve their disputes amicably by providing the incentive of forum choice to file suit quickly," and routinely find the first-filed rule inapplicable when it "would discourage the sound policy of promoting extrajudicial dispute resolution." *HPF, LLC v. Nu Skin Enters., Inc.*, 1999 WL 782573, *2-3 (E.D. Pa. Sept. 28, 1999) (quotations omitted). "Where [a] Court has discretion, it will not reward conduct that undermines the sound policy of promoting settlements and negotiations outside the courthouse." *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 70 (D.R.I. 1999); *see also Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993) (same).

### 3. The Remaining "Convenience Factors" Also Favor Dismissal.

The Federal Circuit has also directed district courts considering dismissal of a declaratory judgment suit to consider factors such as "the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008); *Serco Servs.*, 51 F.3d at 1040. Here, these "convenience factors" strongly weigh against entertaining Arrowhead's action here in Delaware. Put simply, this is a dispute between two

southern California-based parties.    Litigating this dispute in the Central District of California rather than in Delaware unquestionably is more convenient for the parties and the witnesses.

Arrowhead's corporate headquarters is located in the Central District of California, and one of its research and development facilities is located in nearby San Diego.  Ex. D at 1, 30. Arrowhead has no offices located in Delaware.  *Id.* at 31, 59-60.  Arrowhead's Form 10-K also reveals that it had 276 employees in California and *no* employees in Delaware as of September 30, 2024.  *Id.* at 31.  Ionis's action for infringement arises from Arrowhead's business decision to commercialize and seek regulatory approval for plozasiran, which will induce and contribute to infringement of Ionis's '333 patent.  The action also carries a significant damages component: a central issue will be ascertaining Ionis's lost profits from Arrowhead's promotion of its infringing drug, and those damages could be enhanced if Arrowhead's conduct is found to be willful.  Many of the relevant Arrowhead executives with knowledge of its decisions are located in the Central District of California, including, for example, Arrowhead's Chief Executive Officer, Chief Commercial Officer, Executive Director of Clinical Operations, Executive Director and Head of Global Marketing and Sales, Executive Director and Global Head of Market Access, Senior Marketing Director, and Senior Vice President and Cardiovascular/Metabolic Franchise Head. Exs. F-L.  Further, a review of Arrowhead's website reflects that its Commercial, Biostatistics, Medical Affairs, Finance, and Regulatory divisions are all located at their Pasadena office.  Ex. T. Other relevant witnesses are also located in California, including Arrowhead's Chief Operating Officer, its Vice President of Clinical Operations, and three of the co-authors of the plozasiran clinical study publication.  Exs. M-Q; *see* Ex. R (plozasiran study).

Ionis's corporate headquarters and its research and development facility are in Carlsbad, California, whereas it also has no physical locations in Delaware.  Horning Decl. ¶ 4; *see also*

Ex. C at F-35.  While Carlsbad is in the Southern District of California, it is driving distance from the Central District courthouse in Los Angeles.  Ex. S (Google Maps route from Ionis's headquarters to the C.D. Cal. courthouse).  Indeed, some of Ionis's employees live in counties within the Central District and commute to the Carlsbad headquarters.  Horning Decl. ¶ 6.  Ionis's headquarters is home to its executive team, and its drug discovery, clinical development, commercial operations, regulatory affairs, and finance teams, among others.  *Id.* ¶ 7.  A majority of Ionis's employees reside in California, and two of the three named inventors on the '333 patent live in the San Diego area.  Horning Decl. ¶ 5, D.I. 1-1, Ex. V (Witztum), Ex. Y (Alexander).  The Ionis witnesses would be much less inconvenienced by taking a short intrastate drive to Los Angeles than a cross-country flight to Delaware.  *See In re Genentech*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009) ("[T]he parties' convenience factor favored transfer, and not only slightly," when petitioners identified numerous witnesses within the Northern District of California, and "additional witnesses . . . outside of the proposed alternative venue but within California.").

Given their California headquarters, both parties are also likely to have relevant former employees or other non-party witnesses located in California.  These individuals would fall within the Central District of California's state-wide subpoena power but *not* within the District of Delaware's subpoena power.  *See, e.g.,* Exs. P-Q; Fed. R. Civ. P. 45(c).

In short, the location of the witnesses strongly favors dismissing the Delaware action.  "[T]he actual costs of arranging for [the witnesses'] testimony in Delaware" as opposed to California would be substantially greater.  *Woodbolt Distrib.*, 2013 WL 247041 at *3.  Additionally, none of the remaining convenience factors favor exercising jurisdiction over Arrowhead's action.  Dismissing would not create any "absence of jurisdiction over all necessary or desirable parties."  *Micron Tech.*, 518 F.3d at 904.  Ionis and Arrowhead are the only parties,

12

and the Central District of California has personal jurisdiction over both. *SKF Condition Monitoring, Inc. v. SAT Corp.*, 2008 WL 706851, *2 (S.D. Cal. Feb. 27, 2008). Other than the co-pending lawsuit in the Central District of California, there are no related litigations that could be consolidated with this matter.

### B.    Alternatively, The Court Should Transfer this Case to C.D. Cal.

Alternatively, if the Court does not dismiss Arrowhead's anticipatory action, it should transfer this suit to the Central District of California pursuant to 28 U.S.C. § 1404(a).

A case should be transferred to another district if it could have been brought in that district and the balance of convenience factors weighs in favor of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Section 1404(a) sets forth a two-step analysis: "The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012). Third Circuit law applies to transfer motions and, as set forth below, identifies "various private and public interest factors to be considered in a § 1404 transfer analysis." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). These factors warrant transfer here.

### 1.    This Suit Could Have Been Brought in C.D. Cal.

Under § 1391(b), Arrowhead could have brought this action in the Central District of California. There is no dispute that the Central District of California has jurisdiction over both parties, as Ionis and Arrowhead are both headquartered in California. *SKF Condition Monitoring*, 2008 WL 706851 at *1-2 & n.1 ("the test for whether the Court has jurisdiction will depend on Defendant's contacts with the entire state of California, not just the [Federal District] of California where this Court is located") (citing *Pacific Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325,

1327 (9th Cir. 1985)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper" where defendant's actions "create a 'substantial connection' to the forum State.").

As this Court has recognized, "[v]enue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b)." *ACCO Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545, *4 (D. Del. Jan. 17, 2024); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990). Pursuant to the general venue statute, a claim can be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." § 1391(b).

The "events or omissions giving rise to" a declaratory judgment claim are (1) enforcement steps taken by the patent owner and (2) the alleged infringer's infringing conduct. In *Shenzhen City Sanhu Tech. Co. v. Albanese*, the court explained that venue analyses for declaratory judgment suits consider (1) where the patentee "directed communications (such as cease-and-desist letters) regarding the plaintiff's alleged infringements" and (2) where the "alleged infringement took place, such as where the [alleged infringer] reside[s]." 2023 WL 7167009, at *2 (E.D.N.Y. Oct. 31, 2023). *See also Dex Prods., Inc. v. Houghteling*, 2006 WL 1751903, *2, *7 (N.D. Cal. June 23, 2006) (focus is "where the allegedly infringing actions took place"); *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 484 (D.N.J. 2009) (venue proper in New Jersey because the "subject of the [declaratory judgment] action is the Accused Products, which are manufactured by [the accused infringer], which has its place of business in New Jersey").

Here, Arrowhead, a Central District of California resident, made and announced its decision to develop and commercialize plozasiran at its headquarters in Pasadena. *See* Exs. W-X.

That is also where Ionis sent its September 3rd letter regarding Arrowhead's infringement, and where Ionis told Arrowhead it would file suit. Ex. A; *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1206 (Fed. Cir. 2018) (patent enforcement letters directed at companies in the Northern District of Texas supported venue in that district); *Shenzhen City*, 2023 WL 7167009 at *2; S*udden Valley Supply LLC v. Ziegmann*, 2013 WL 2099440, *5 (E.D. Mo. May 14, 2013) (Plaintiff's receipt of Defendant's cease and desist letter in the Eastern District of Missouri supported venue there.)

### 2.    The Private Interest Factors Strongly Favor Transfer.

The factors the Third Circuit uses to evaluate § 1404(a) transfer motions—(1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of the books and records, *Jumara*, 55 F.3d at 879—weigh strongly in favor of transfer. The first factor is entitled to little deference because Delaware is not Arrowhead's home; the others all favor transfer.

### a.    Arrowhead's choice of Delaware weighs minimally.

"When a plaintiff brings its charges in a venue that is not its home forum [] that choice of forum is entitled to less deference." *In re Link_A_Media Devices*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). "A defendant's burden with respect to plaintiff's choice of forum is easier to meet where the plaintiff has not brought suit on its 'home turf.'" *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986). Courts in this district have observed that when a plaintiff is incorporated in Delaware but has "no facilities, operations, employees, or presence in Delaware," the plaintiff's preference "weighs minimally against transfer." *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, *3 (D. Del. Feb. 13, 2015). That plaintiff's forum preference of Delaware "does not carry

15

the same weight as it would for a corporation with a principal place of business in [Delaware]." *Express Mobile, Inc. v. Web.Com Grp., Inc.*, 2020 WL 3971776, *2 (D. Del. July 14, 2020).

Courts in this district have routinely transferred venue in these situations—where one or both parties were incorporated in Delaware, but neither has a principal place of business here. For example, in *OpenTV, Inc. v. Netflix, Inc.,* both plaintiff and defendant were Delaware corporations with principal places of business in California. 2014 WL 1292790, *1 (D. Del. Mar. 31, 2014). Because OpenTV was not physically located in Delaware, the court did "not accord substantial weight to OpenTV's choice of Delaware," and granted the motion to transfer to California. *Id.* at *2. The court in *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.* also accorded minimal weight to a Delaware-incorporated plaintiff's preference because it was not the plaintiff's principal place of business, and transferred the case to California, where defendant had its principal place of business. 2017 WL 1536394, at *3-4 (D. Del. Apr 27, 2017). Similarly, in *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, the court transferred a case against a Delaware corporation to California when both parties were "physically located on the west coast" and neither had established places of business in Delaware. 77 F. Supp. 2d 505, 509 (D. Del. 1999). And in *Linex Technologies, Inc. v. Hewlett-Packard Co.*, the court transferred a case to California when plaintiff and four of the five defendants were Delaware corporations, but no party had a principal place of business in Delaware. 2013 WL 105323, *1 (D. Del. Jan. 7, 2013).

Because Arrowhead seeks to litigate away from its "home turf" and in a location with little connection to its business, this factor has minimal weight.

> **b.    Ionis's preference to litigate in the Central District of California weighs in favor of transfer.**

"As this Court has often held, the physical proximity of the proposed transferee district to a defendant's principal or key place of business (and relatedly, to witnesses and evidence

potentially at issue in the case) is a clear, legitimate basis for seeking transfer." *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015); *Nalco Co. v. AP Tech Grp. Inc.*, 2014 WL 3909114, *1 (D. Del. Aug. 8, 2014). The Central District of California is home to Arrowhead's principal place of business and neighbors Ionis's principal place of business in Carlsbad, California. It is far closer than Delaware to the witnesses and evidence at issue in this case. The Central District's close physical proximity to Ionis and Arrowhead's principal places of business weighs strongly in favor of transfer.

### c. The infringement has significant connections with C.D. Cal.

Ionis's claims of patent infringement have "deeper roots" with the Central District of California—where Arrowhead's executive offices and headquarters are located—compared with Delaware, where Arrowhead has no facilities. *Linex*, 2013 WL 105323, at *3-4 ("[I]nfringement claims have even deeper roots in the forum where the accused products were developed," even if infringement occurs in "all districts."). Arrowhead's business decisions to develop and bring plozasiran to market was made in the Central District of California, where Arrowhead's Chief Executive Officer, Chief Commercial Officer, Executive Director of Clinical Operations, Executive Director and Head of Global Marketing and Sales, Executive Director and Global Head of Market Access, and Senior Vice President and Cardiovascular/Metabolic Franchise Head are all based. Exs. F-J, L. This factor weighs in favor of transfer.

### d. C.D. Cal. is more convenient for both Ionis and Arrowhead.

In evaluating convenience, the court considers "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) . . . and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Mitek Sys., Inc. v. USAA*, 2012 WL 3777423, *6 (D. Del. Aug. 30, 2012). Here, the parties and witnesses are based in California, not

17

Delaware.  *Supra* Section V.A.3.  Adjudicating this case in the Central District would save the parties travel time, logistical inconvenience, and expenses because employees would only have to travel intrastate, instead of cross-country.  This factor militates in favor of transfer.

### e.    More potential witnesses are in the C.D. Cal. subpoena power.

The "convenience of the witnesses" is relevant "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  "Of particular concern here are fact witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45." *Papst*, 126 F. Supp. 3d at 441.  As explained above, many, if not most, of the relevant witnesses from both parties are within the Central District of California's state-wide subpoena power—*not* within the District of Delaware's subpoena power.  *See supra* Section V.A.3, Exs. P-Q; Fed. R. Civ. P. 45(c).  Therefore, this factor strongly favors transfer.

### f.    The location of the relevant books and records favors C.D. Cal.

"[T]he place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed Cir. 2009).  Here, Arrowhead does not maintain documents in Delaware, whereas they are expected to have relevant development, regulatory, commercialization, and financial documents relating to plozasiran at their headquarters in the Central District of California.  Meanwhile, Ionis's "core business units," including "drug discovery, clinical development, regulatory affairs, commercial operations, financial planning and analysis, and regulatory affairs" are all located in nearby Carlsbad, California.  Horning Decl. at ¶ 4.  Although "technological advances in the electronic storage and transfer of documents have made this factor somewhat antiquated," this Court "cannot simply ignore the location of the relevant books and records." *Smart Audio*, 910 F. Supp. 2d at 732.  This factor also favors transferring the case to California.

### 3.    The Public Interest Factors Also Strongly Favor Transfer.

The public interest factors include: (1) "practical considerations that could make the trial easy, expeditious, or inexpensive," (2) the relative "court congestion," and (3) the "local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879.[3] The public interest factors all also counsel in favor of transfer here.

### a.    Trial in C.D. Cal. will be more practical and efficient.

A trial in the Central District of California would be both logistically easier and less expensive. As already discussed, the documents, witnesses, and employees of both parties are by and large located in Southern California—and not in Delaware. Transferring the case to the Central District of California would minimize the time away from family and work for both Ionis and Arrowhead employees. There are also no related lawsuits in the District Court of Delaware that could be consolidated with this action in the interests of efficiency. Arrowhead is also familiar with the Central District of California: a PACER search reveals that it has been a party in six lawsuits in that district, whereas this is Arrowhead's only action in the District of Delaware. *See Symantec*, 2017 WL 3262246 at *4 (plaintiff's prior suits in the transferee forum mean it "is familiar with the District and comfortable litigating in its principal place of business"). These practical considerations weigh strongly in favor of transfer.

### b.    Court congestion in Delaware favors transfer.

Courts in this district have observed "[I]ncreased times from filing to disposition and trial are important factors that do influence the court's calculus." *W.R. Berkley Corp. v. Niemela*, 2017

---

[3] Because this is a federal patent dispute, three of the other public interest factors—the enforceability of the judgment, the public policies of the fora, and the familiarity of the trial judge with the applicable state law—are neutral or irrelevant to this case. *Symantec Corp. v. Zscaler, Inc.*, 2017 WL 3262246, *4-5 & n. 34 (D. Del. July 31, 2017).

WL 4081871, *5 (D. Del. Sept. 15, 2017). The most recent Federal Judicial Caseload Statistics show that this action is likely to be resolved faster in the Central District of California. The median time filing to trial in the Central District is 26.5 months, compared to 35 months in Delaware. Ex. U. Additionally, the Central District has fewer pending cases per judgeship than the District of Delaware, and only 7.3% of civil cases in the Central District are over three years old, compared to 17.6% of civil cases in Delaware. Ex. U. These statistics favor transfer.

### c.    The C.D. Cal. court has a local interest in deciding this case.

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Similarly, when "the cause of action calls into question the work and reputation of several individuals residing in or near [a] district and who presumably conduct business in that community," the district's "local interest in [the] case [is] strong." *Id.* at 1336. As discussed above, Arrowhead's conduct regarding the accused product, which gave rise to this declaratory judgment action, has extensive ties with the Central District of California, since that is where Arrowhead's principal place of business is located. Arrowhead's decision to develop plozasiran also implicates the work of Arrowhead's leadership, who conduct business out of their executive offices in Pasadena. Accordingly, the Central District of California has a greater local interest in this case and this factor, like the others, favors transfer to that district.

## VI.    CONCLUSION

For the foregoing reasons, Ionis respectfully requests that this action be dismissed, or in the alternative, transferred under 28 U.S.C. § 1404(a) to the Central District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

_____

OF COUNSEL:

Jessamyn S. Berniker
Thomas S. Fletcher
Kathryn S. Kayali
Michael Xun Liu
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC  20024
(202) 434-5000

October 6, 2025

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendant*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 6, 2025, upon the following in the manner indicated:

Susan E. Morrison, Esquire                           *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Megan A. Chacon, Esquire                            *VIA ELECTRONIC MAIL*
Madelyn McCormick, Esquire
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA  92130
*Attorneys for Plaintiff*

Louis Fogel, Ph.D.                                          *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
150 N. Riverside Plaza, Suite 2820
Chicago, IL  60606
*Attorneys for Plaintiff*


*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)