**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARROWHEAD PHARMACEUTICALS, INC., | |
| Plaintiff, | C.A. No.  25-cv-01130-GBW |
| v. | **JURY TRIAL DEMANDED** |
| IONIS PHARMACEUTICALS, INC., | |
| Defendants. | |

<u>**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**</u>

Susan E. Morrison (#4690)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone: (302) 652-5070
Email: morrison@fr.com

Louis E. Fogel
FISH & RICHARDSON P.C.
150 N. Riverside Plaza, Ste. 2820
Chicago, IL 60606
Telephone: (312) 278-2700
Email: fogel@fr.com

Megan A. Chacon
Madelyn S. McCormick
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Email: chacon@fr.com
mmccormick@fr.com

*Attorneys for Plaintiff
Arrowhead Pharmaceuticals, Inc.*

Dated:  October 20, 2025

I.    INTRODUCTION ......................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

III.  SUMMARY OF THE ARGUMENT ............................................................ 2

IV.   STATEMENT OF FACTS ........................................................................... 3

      A.    The Parties Are Delaware Corporations. ........................................... 3

      B.    Plozasiran's Development and Supply Chain Are Anchored in Wisconsin. .......... 3

      C.    Ionis Starts a Conveniently Timed, Business-Critical Dispute.............. 4

V.    ARGUMENT .............................................................................................. 5

      A.    The Court Should Not Discretionarily Dismiss Arrowhead's Delaware Action.... 5

            1.    Arrowhead's Delaware action takes priority under the first-to-file rule,
                  and Ionis has not met its burden to show that an exception applies. .......... 6

                  a.    Arrowhead's suit is not an improper anticipatory filing................ 6

                  b.    Ionis cannot satisfy its burden to show that the *Jumara* factors
                        "strongly" weigh in favor of dismissal. ........................................ 10

                        i.     Factor 1: Arrowhead chose Delaware.............................. 11

                        ii.    Factor 2: Ionis prefers the Central District of California.. 11

                        iii.   Factor 3: The claims did not arise in California. .............. 11

                        iv.    Factor 4: The parties' resources and Delaware's
                               accessibility weigh against transfer. ................................ 12

                        v.     Factor 5: Witness convenience is neutral.......................... 13

                        vi.    Factor 6: The location of records is at best neutral.......... 14

                        vii.   Factor 8: Practical considerations favor Delaware. .......... 14

                        viii.  Factor 9: Delaware's docket is less congested................. 15

                        ix.    Factor 10: Wisconsin supplies any "local interest." ......... 16

            2.    Exercising jurisdiction is consistent with the Declaratory Judgment
                  Act's objectives........................................................................................ 16

      B.    The Court Should Deny Ionis's Motion to Transfer to C.D. Cal.......................... 18

i

1.    Arrowhead could not have brought this action in C.D. Cal...................... 18

2.    The *Jumara* factors do not "strongly" weigh in favor of transfer............ 20

VI.    CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-V Fluids, Inc. v. Jana Media, LLC*,
    2021 WL 5155698 (S.D. Tex. Mar. 22, 2021)........................................................................19

*Amperex Tech. Ltd. v. Maxell, Ltd.*,
    2021 WL 4398804 (D.N.J. Sept. 27, 2021) ............................................................................8

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
    387 F.3d 1352 (Fed. Cir. 2004)...............................................................................................5

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
    2022 WL 16921988 (D. Del. Nov. 14, 2022) ...........................................................10, 14, 15

*Commc'ns Test Design, Inc. v. Contec, LLC*,
    952 F.3d 1356 (Fed. Cir. 2020)...........................................................................6, 7, 8, 18

*Davox Corp. v. Digital Sys. Int'l, Inc.*,
    846 F. Supp. 144 (D. Mass. 1993) .........................................................................................18

*Dex Prods., Inc. v. Houghteling*,
    2006 WL 1751903 (N.D. Cal. June 23, 2006) .......................................................................19

*Dialect LLC v. Google, LLC*,
    2024 WL 1328908 (D. Del. Mar. 28, 2024) ...........................................................11, 12, 14

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*,
    350 F. Supp. 2d 620 (E.D. Pa. 2004) ......................................................................................8

*EchoStar Satellite L.L.C. v. Finisar Corp.*,
    515 F. Supp. 2d 447 (D. Del. 2007)........................................................................................17

*Electronics for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005)......................................................................................5, 6, 16

*Genedics, LLC v. Meta Co.*,
    2018 WL 417950 (D. Del. Jan. 12, 2018)...............................................................................13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................14

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
    824 F.2d 953 (Fed. Cir. 1987)................................................................................................17

*Google LLC v. Sonos, Inc.*,
   2020 WL 6822880 (N.D. Cal. Nov. 20, 2020) ........................................................9

*In re Hoffmann-La Roche Inc.*
   587 F.3d 1333 (Fed. Cir. 2009)...........................................................................16

*HPF, LLC v. Nu Skin Enters., Inc.*,
   1999 WL 782573 (E.D. Pa. Sept. 28, 1999) ........................................................18

*Intell. Ventures I LLC v. Altera Corp.*,
   842 F. Supp. 2d 744 (D. Del. 2012)....................................................10, 11, 12, 13

*Ionis Pharmaceuticals, Inc. v. Arrowhead Pharmaceuticals Inc.*,
   No. 2:25-cv-08609 HDV (AGRx) (C.D. Cal. Sept. 11, 2025) ...........................3, 15

*Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*,
   910 F.3d 1199 (Fed. Cir. 2018)...........................................................................20

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)........................................................... *passim*

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
   670 F. Supp. 2d 349 (D. Del. 2009)...........................................................11, 12, 17

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
   518 F.3d 897 (Fed. Cir. 2008)...........................................................................10, 16

*Minn. Mining & Mfg. Co. v. Norton Co.*,
   929 F.2d 670 (Fed. Cir. 1991).............................................................................17

*Nexans Inc. v. Belden Inc.*,
   966 F. Supp. 2d 396 (D. Del. 2013).......................................................................7

*In re Nitro Fluids L.L.C.*,
   978 F.3d 1308 (Fed. Cir. 2020).............................................................................10

*Nortek, Inc. v. Molnar*,
   36 F. Supp. 2d 63 (D.R.I. 1999)...........................................................................18

*Peloton Interactive, Inc. v. Lululemon Athletica Can. Inc.*,
   2022 WL 4585812 (S.D.N.Y. Sept. 29, 2022)........................................................8

*Pro Sports Inc. v. West*,
   639 F. Supp. 2d 475 (D.N.J. 2009) .................................................................19, 20

*Roku, Inc. v. AlmondNet, Inc.*,
   2021 WL 5299247 (D. Del. Nov. 15, 2021) ..................................................7, 18, 20

*Serco Servs. Co. v. Kelley Co.*,
  51 F.3d 1037 (Fed. Cir. 1995).................................................................7

*Shenzhen City Sahnu Tech. Co. v. Albanese*,
  2023 WL 7167009 (E.D.N.Y. Oct. 31, 2023)..........................................20

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970)......................................................10, 11, 18

*Smart Audio Techs., LLC v. Apple, Inc.*,
  910 F. Supp. 2d 718 (D. Del. 2012).....................................................11, 12

*Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*,
  2019 WL 652862 (E.D. Cal. Feb. 15, 2019)..............................................8

*Telebrands Corp. v. martFIVE, LLC*,
  2013 WL 4675558 (D.N.J. Aug. 30, 2013) ...............................................8

*TGL Golf Holdings, LLC v. LA Golf Partners, LLC*,
  2025 WL 1638353 (D. Del. June 9, 2025)....................................9, 17, 18

*Trustco Bank v. Automated Transactions LLC*,
  933 F. Supp. 2d 668 (D. Del. 2013).........................................................7

*TSMC Tech., Inc. v. Zond, LLC*,
  No. CV 14-721-LPS-CJB, 2014 WL 7251188, (D. Del. Dec. 19, 2014), *adop-
  ted*, 2015 WL 328334, (D. Del. Jan. 26, 2015).........................7, 8, 11, 17

*Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*,
  2013 WL 247041 (D. Del. Jan. 23, 2013)..................................................8

*In re Xoft, Inc.*,
  435 F. App'x 948 (Fed. Cir. 2011) .........................................................10

**Statutes**

28 U.S.C. § 1391(b) ...................................................................................2

28 U.S.C. §§ 1391(b)(1)–(2)......................................................................19

28 U.S.C. § 1404(a) ..........................................................................2, 5, 18

## I.     INTRODUCTION

The Declaratory Judgment Act allows a party under threat to seek clarity in Court. On September 10, 2025, Arrowhead Pharmaceuticals, Inc. ("Arrowhead") filed this declaratory-judgment action after Ionis Pharmaceuticals, Inc. ("Ionis") accused it of infringing U.S. Patent No. 9,593,333 (the "'333 patent") and announced it would sue Arrowhead in the Central District of California. The day after Arrowhead filed this suit, Ionis made good on that threat. The question is which case should proceed. Under the first-to-file rule, the answer is Delaware.

Arrowhead and Ionis are both Delaware-incorporated biopharmaceutical companies competing in the same rare-disease space. After years of early discovery and development from its research hub in Wisconsin, Arrowhead's first drug, plozasiran, is nearing FDA approval. If approved, plozasiran will be used to treat familial chylomicronemia syndrome ("FCS")—a severe and ultra-rare disorder with few treatment options. Ionis, which sells the only existing FDA-approved therapy for FCS, views Arrowhead's success as a commercial threat.

Rather than compete in the marketplace, Ionis sought to cloud Arrowhead's launch with litigation, sending Arrowhead a letter alleging patent infringement on the eve of FDA approval. Faced with the threat of an imminent suit, Arrowhead did what Congress intended under the Declaratory Judgment Act: it sought clarity. Ionis now asks this Court to dismiss or transfer this case to its preferred forum in California. But dismissal is improper under the first-to-file rule. And transfer is improper because this case could not have originally been brought in the Central District of California. Instead, Delaware, the parties' shared state of incorporation, is where this dispute first and properly began. The Court should thus deny Ionis's motion and allow Arrowhead's first-filed declaratory judgment action to proceed in Delaware.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On September 10, 2025, Arrowhead filed a complaint in this Court to obtain a declaratory

judgment of invalidity and non-infringement of the '333 patent. (D.I. 1.) The next day, Ionis filed

a complaint for infringement of the '333 patent in the Central District of California. Before the

Court is Ionis's Motion to Dismiss or, in the Alternative, to Transfer Venue. (D.I. 13.) For the

reasons discussed below, Ionis's motion should be denied.

## III.    SUMMARY OF THE ARGUMENT

1.    It is undisputed that Arrowhead filed this declaratory-judgment action on September 10, 2025—one day before Ionis filed its mirror-image infringement suit in California. Under binding Federal Circuit precedent, when two actions present the same dispute, the first-filed forum presumptively controls, and the later-filing party bears the burden to show a "sound reason" to depart. Ionis cannot meet that burden here.

2.    No exception justifies departure from the first-to-file rule here. The "anticipatory filing" exception turns on an evaluation of whether the first filer's tactics were unfair, such as feigning settlement or lulling an adversary into delay. Such facts do not exist here. Moreover, the *Jumara* factors do not "strongly" favor dismissal or transfer. Both parties are multi-billion-dollar Delaware corporations with nationwide operations, and much of the research and development of plozasiran occurred in Wisconsin, not California. Delaware's docket is lighter, its time to trial faster, and its judges routinely manage complex patent cases.

3.    Transfer is unavailable as a matter of law under 28 U.S.C. § 1404(a), which permits transfer only to a district where the action "might have been brought" at the time of filing. Under 28 U.S.C. § 1391(b), venue lies where the defendant resides or where the accused product is made, stored, or sold. The Central District of California does not satisfy any of these options. Ionis does not reside there. And, in support of FDA approval, the accused product (plozasiran) was made in Colorado, filled and finished in pre-filled syringes in the Southern District of California (San Diego), shipped to Pennsylvania for packaging, and then will be shipped to Kentucky for storage and

2

distribution. It has not yet been sold. Moreover, for the same reasons that the *Jumara* factors do not favor dismissal, they also do not favor transfer.

## IV.    STATEMENT OF FACTS

### A.    The Parties Are Delaware Corporations.

Arrowhead is a biopharmaceutical innovator and a publicly traded Delaware corporation headquartered in Pasadena, California. (Declaration of David Bormett ("Bormett Decl.") ¶ 1.) It operates major research and manufacturing facilities in Madison and Verona, Wisconsin, and has an additional research site in San Diego, California. (*Id.* ¶ 2.) Arrowhead's market capitalization is approximately $5 billion.[1] (*Id.*)

Ionis is also a publicly traded Delaware corporation that makes pharmaceuticals. (D.I. 14 at 3; D.I. 15-1, Ex. C at 23.) It is headquartered in Carlsbad, California—which lies in the Southern District of California. (*See* D.I. 16 ¶ 4.) Ionis has a market capitalization of roughly $11 billion.[2]

### B.    Plozasiran's Development and Supply Chain Are Anchored in Wisconsin.

Arrowhead has spent years using its proprietary RNAi technology to develop plozasiran, a therapy for FCS. (D.I. 1 ¶¶ 15–16, 20–24.) FCS is a severe and ultra-rare disorder that prevents the body from clearing triglycerides from the blood. (*Id.* ¶18.) The work that made plozasiran possible happened in Wisconsin, where Arrowhead's scientists developed the product. (Bormett Decl. ¶¶ 3, 6.) Arrowhead has two major facilities in Wisconsin: an R&D site in Madison, and a recently constructed manufacturing facility in nearby Verona, where Arrowhead is preparing to commercially manufacture and supply its drugs in the near future. (*Id.* ¶¶ 2, 4.) Those two facilities presently house more than half of Arrowhead's employees. (*Id.* ¶¶ 5, 17.) The Verona facility

---

[1] *Arrowhead Pharmaceuticals, Inc. (ARWR)*, NASDAQ, (Oct. 13, 2025, 12:29 PM), https://www.nasdaq.com/market-activity/stocks/arwr.
[2] *Ionis Pharmaceuticals, Inc. (IONS)*, NASDAQ, (Oct. 13, 2025, 12:24 PM), https://www.nasdaq.com/market-activity/stocks/ions.

alone has 300,000 square feet of laboratory, manufacturing, and quality-control space, along with offices supporting the company's broader RNAi pipeline. (*Id.* ¶ 4; Ex. 1 at 30.)

Wisconsin remains the operational center of plozasiran's supply chain, which is where the heads of Arrowhead's manufacturing and supply chain departments reside. (Bormett Decl. ¶ 15.) Arrowhead has undertaken various development and manufacturing efforts in support of its New Drug Application for FDA approval of plozasiran. (*Id.* ¶ 7.) For example, plozasiran is presently being produced by a contract manufacturer located in Colorado, with fill-and-finish operations in San Diego. (*Id.* ¶¶ 8–9.) The finished product is then shipped to Pennsylvania for final packaging, and upon completion, will be sent to Kentucky for storage and distribution. (*Id.* ¶¶ 10–11.) None of these manufacturing or distribution activities occurs in the Central District of California.

Current employees with knowledge of plozasiran are located across the country, with many in Wisconsin, San Diego (the Southern District of California), and San Francisco (the Northern District of California); some former employees with relevant knowledge also reside outside the Central District of California, and at least one currently lives in Charleston, South Carolina. (*Id.* ¶¶ 15–16.) Physical laboratory notebooks are located in Wisconsin, but they are scanned and available electronically. (*Id.* ¶ 19.) All other company records are stored in Wisconsin, Pasadena, and San Diego, and are maintained electronically and accessible nationwide. (*Id.* ¶¶ 18, 20.)

### C.    Ionis Starts a Conveniently Timed, Business-Critical Dispute.

Ionis also develops therapies targeting FCS and markets Tryngolza® (olezarsen), a treatment that targets FCS using a different mechanism of action than plozasiran. (D.I. 1 ¶¶ 25–28.) Seeing Arrowhead's progress towards FDA approval, Ionis launched its campaign against plozasiran on April 23, 2025, when it sent a letter accusing Arrowhead of violating the Lanham Act, the Federal Food, Drug, and Cosmetic Act, and California state law. (D.I. 1-6, Ex. F at 1–2 (the "April letter").) That April letter stopped short of threatening suit. (*See id.* at 8.) Arrowhead

4

responded a month later, on May 22, 2025, categorically denying Ionis's allegations. (D.I. 1-7, Ex. G at 1.) Ionis never followed up on those allegations.

Instead, Ionis sent another letter on September 3, 2025, just two months before Arrowhead's anticipated FDA approval. (D.I. 1-8, Ex. H at 1.) That letter said nothing about Ionis's earlier allegations, but for the first time alleged that launching plozasiran would infringe the '333 patent, and announced Ionis's intent to sue in the Central District of California just six business days later, on September 11, 2025. (*Id.* at 2.) That letter contained no infringement analysis, no offer to license the '333 patent, and further warned that Arrowhead's commercialization of plozasiran "will cause Ionis serious and irreparable harm," signaling a potential preliminary injunction motion. (*Id.*)

Faced with Ionis's serious allegations, Arrowhead concluded its most prudent course was to clear the air and sue under the Declaratory Judgment Act. Accordingly, Arrowhead filed this action on September 10, 2025. (D.I. 1.)

## V.    ARGUMENT

The Court should deny Ionis's motion. Discretionary dismissal is unwarranted under the Federal Circuit's first-to-file rule, and transfer to the Central District of California is improper under § 1404(a).

### A.    The Court Should Not Discretionarily Dismiss Arrowhead's Delaware Action.

The Declaratory Judgment Act grants district courts discretion to decline jurisdiction, but that discretion must rest on "well-founded reasons." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). When a declaratory judgment suit overlaps with a later-filed infringement case, the Federal Circuit and courts in this district apply a two-step inquiry. First, the court asks which action was filed first, because that forum is presumptively entitled to proceed. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ["*EFI*"]. Second, the

court asks whether an exception applies—for example, anticipatory filing or forum convenience. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020). Here, the first-to-file rule favors keeping this case in Delaware, and Ionis cannot prove any exception applies.

> **1.    Arrowhead's Delaware action takes priority under the first-to-file rule, and Ionis has not met its burden to show that an exception applies.**

There is no dispute that Arrowhead filed first. (D.I. 14 at 2.) Under settled Federal Circuit law, when two actions present the same patent dispute, the first-filed forum takes priority, and the later-filed case should ordinarily be stayed, transferred, or dismissed. *Contec*, 952 F.3d at 1362. A properly filed declaratory judgment action receives the same deference as an infringement complaint. *Id.* Given that Arrowhead filed first, Ionis bears the burden of showing a "sound reason" to depart from Delaware as the first-filed forum. *EFI*, 394 F.3d at 1347. Ionis cannot prove that either exception it raises—anticipatory filing or convenience—warrants dismissal or transfer to the Central District of California.

> **a.    Arrowhead's suit is not an improper anticipatory filing.**

Ionis's argument that Arrowhead's suit should be dismissed as an "anticipatory filing" misapprehends the doctrine. Under Ionis's view, any declaratory judgment action filed shortly before a threatened infringement complaint would be improperly anticipatory. That is not the law. Courts applying the first-filed rule treat anticipation as a *fairness-based exception*, not a timing penalty, and require some showing of unfair tactics or gamesmanship before departing from the presumption favoring the first-filed forum. Even then, "anticipation is merely one factor in the analysis," not an automatic basis for dismissal. *Id.* at 1347–48.

An anticipatory filing has two requirements: timing, in that it must come before an imminent threat of suit, and tactics, in that it must involve some maneuvering designed to "affirmatively mislead." For example, in *TSMC Tech., Inc. v. Zond, LLC*, the court emphasized that the exception

applies when the declaratory plaintiff acts unfairly, such as by lulling the patentee into delay or feigning settlement to gain an advantage. No. CV 14-721-LPS-CJB, 2014 WL 7251188, at *9 (D. Del. Dec. 19, 2014), *adopted*, 2015 WL 328334, at *1 (D. Del. Jan. 26, 2015). There, as here, the patentee sent a letter identifying the precise forum and filing date for suit, giving the declaratory plaintiff only a few days to respond. *Id.* at *3, *9. The plaintiff instead filed a declaratory-judgment action three days later. *Id.* at *3. Yet the court refused to treat the filing as improper, explaining that the plaintiffs "did not attempt to lull [the patentee] into complacency . . . [n]or did they otherwise engage in anything approaching affirmative misconduct," but "simply did what the Declaratory Judgment Act gives them a right to do—they filed suit in their preferred forum." *Id.* at *9. The court further held that "the anticipatory nature of [the] suit . . . should be given no more than minimal consideration" absent evidence of bad faith. *Id.* at *10. *See also Trustco Bank v. Automated Transactions LLC*, 933 F. Supp. 2d 668, 672 (D. Del. 2013) (rejecting anticipation argument where plaintiff filed during negotiations because "[p]reparations for litigation during negotiations are commonplace" and "there is no evidence of bad faith."); *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 404–05 (D. Del. 2013) (rejecting anticipation argument where no "nefarious motive" and the declaratory plaintiff simply sought judicial resolution); *Roku, Inc. v. AlmondNet, Inc.*, 2021 WL 5299247, at *1, *5 (D. Del. Nov. 15, 2021) (finding no anticipation despite threat of lawsuit "that very same day" after plaintiff declined to continue licensing negotiations).

Each of the cases Ionis cites (D.I. 14 at 5–7) involves an unfair tactic by the first filer.[3] Those tactics include stringing along settlement talks, filing suit mid-negotiation, exploiting

---

[3] *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037 (Fed. Cir. 1995), did not include bad faith, but is nearly thirty years old and pre-dates the modern *Contec* framework. *Serco* merely held that it was *not an abuse of discretion* to consider a party's decision to file in response to an imminent suit "as one factor" among others; it did not establish a rule that timing alone defeats a first-filed declaratory action. *Id.* at 1040.

deadlines or courtesies extended by the other side, or disguising bad-faith intent behind claims of cooperation. *Contec*, 952 F.3d at 1363–64 (affirming dismissal where declaratory plaintiff "continued the pretense of good-faith negotiations," assuring the patentee litigation "might be avoidable" while preparing its complaint and "string[ing] [the opponent] along just long enough to get the judicial drop"); *Amperex Tech. Ltd. v. Maxell, Ltd.*, 2021 WL 4398804, at *6 (D.N.J. Sept. 27, 2021) (plaintiff's counsel said he would "be in touch" to schedule another meeting and provide materials during ongoing licensing discussions, then filed a 90-page declaratory-judgment complaint two hours later—"feign[ing] cooperation" and interfering with active negotiations); *Peloton Interactive, Inc. v. Lululemon Athletica Can. Inc.*, 2022 WL 4585812, at *3 (S.D.N.Y. Sept. 29, 2022) (plaintiff requested extension to respond to cease-and-desist letter "as a matter of professional courtesy," then, rather than responding, filed suit on the extended date); *Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*, 2019 WL 652862, at *8 (E.D. Cal. Feb. 15, 2019) (plaintiff's new counsel told other side he would "be in touch" regarding a pending settlement offer after weeks of negotiations, then filed suit two days later, constituting "misdirection"); *Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*, 2013 WL 247041, at *4–5 (D. Del. Jan. 23, 2013) (plaintiff filed two days before scheduled negotiation call and described the filing as a "precautionary measure," showing effort to bolster negotiation leverage); *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004) (plaintiff sought delay to "resolve the dispute amicably" but filed two days later, after patentee forwent suit in reliance on that assurance); *Telebrands Corp. v. martFIVE, LLC*, 2013 WL 4675558, at *2 (D.N.J. Aug. 30, 2013) (plaintiff requested "additional information" to respond to cease-and-desist letter, then filed that same day, demonstrating anticipatory bad faith).

Here, like the plaintiff in *TSMC*, Arrowhead responded to an explicit litigation threat that

identified the forum, the filing date, and the patent—but did nothing to mislead its adversary or stall discussions. Ionis first alleged patent infringement in its September 3, 2025, letter, and announced its plan to sue in the Central District of California. (D.I. 1-8, Ex. H at 2.) Ionis's September 3 letter does not offer a license or other compromise; instead, it simply accuses Arrowhead of infringement and threatens an imminent lawsuit. Two days later, Arrowhead sent a short email in response: "We acknowledge receipt of the letter from Dr. Monia and are evaluating it. Have a nice weekend. Kind regards, Bob." (D.I., 15-1, Ex. E at 33.) Faced with Ionis's ultimatum, Arrowhead evaluated its position and filed this case five days later to resolve the newly crystallized dispute. There were no false assurances, no feigned settlement talks, and no delay tactics—just a straight-forward invocation of the Declaratory Judgment Act to clarify rights on the eve of its FDA-approved product launch.

Two other cases Ionis relies on—*Google* and *TGL Golf*—also reflected manipulative or dilatory behavior that triggered the fairness concerns animating the anticipatory-filing exception. *See Google LLC v. Sonos, Inc.*, 2020 WL 6822880, at *1–3 (N.D. Cal. Nov. 20, 2020) (court stayed action where Google filed a "ramshackle" declaratory complaint amid an ongoing "global patent war" unfolding in "the ITC, [N.D. Cal.], . . . Canada, France, Germany, and the Netherlands" and concluded that "[t]his action and the accompanying international campaign are emblematic of the worst aspects of patent litigation."); *TGL Golf Holdings, LLC v. LA Golf Partners, LLC*, 2025 WL 1638353, at *3–4 (D. Del. June 9, 2025) (finding anticipatory filing where plaintiff waited more than a year after learning of alleged infringement, then "raced to the courthouse" to avoid the opponent's home forum). This case bears none of those features: it is not part of an ongoing global patent war between the parties, and there was no delay or tactical waiting. Ionis's September 3 letter was the first time it alleged infringement of the '333 patent; Arrowhead filed suit shortly

after receiving it.

For all these reasons, Ionis cannot show the requisite bad faith or unfairness required to make Arrowhead's filing "anticipatory," and Ionis's motion to dismiss should be denied.

### b.    Ionis cannot satisfy its burden to show that the *Jumara* factors "strongly" weigh in favor of dismissal.

Even if the Court deemed Arrowhead's first-filed declaratory judgment action "anticipatory," which it should not, that label does not end the inquiry. The Court must next assess whether the case should proceed based on the convenience of the parties and witnesses—a step that, as the Federal Circuit explains, "essentially mirrors" the standard transfer analysis under the Third Circuit's *Jumara* factors. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1310–11 & n.2 (Fed. Cir. 2020) (applying regional circuit transfer factors to first-to-file analysis). "[U]nless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *accord In re Xoft, Inc.*, 435 F. App'x 948, 949–50 (Fed. Cir. 2011) (applying Third Circuit law); *see also Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 WL 16921988, at *8 (D. Del. Nov. 14, 2022) (three factors favoring transfer to one against was insufficient to transfer); *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760–61 (D. Del. 2012) ["*I.V. I*"] (five to three insufficient).

Ionis cannot make that showing here. As explained below, the majority of the *Jumara* factors either point toward Delaware or are neutral.[4]

---

[4] The parties agree that factors seven, eleven, and twelve are neutral or irrelevant here (*See* D.I. 14 at 19 n.3), so Arrowhead does not address them.

i.      **Factor 1: Arrowhead chose Delaware.**

The first factor—plaintiff's choice of forum—receives "heightened deference," particularly where, as here, it involves the first of two parallel cases. *See Dialect LLC v. Google, LLC*, 2024 WL 1328908, at *2 (D. Del. Mar. 28, 2024) (Williams, J.); *accord Shutte*, 431 F.2d at 25. That deference applies so long as Arrowhead chose Delaware for "some legitimate reason." *I.V. I*, 842 F. Supp. 2d at 753.

This factor weighs strongly in Arrowhead's favor. Arrowhead is a Delaware corporation, as is Ionis. One Delaware corporation suing another in Delaware is an entirely "rational and legitimate" decision. *TSMC*, 2014 WL 7251188, at *15 (deferring to plaintiff's choice absent some "improper reason" for that choice). Ionis's effort to downplay this factor's importance ignores this Court's conclusions to the contrary. *E.g.*, *Dialect*, 2024 WL 1328908, at *2 (Williams, J.) (granting this factor "heightened deference"). "Home turf" or not, (D.I. 14 at 15), a plaintiff's "decision to litigate in Delaware is still accorded significant deference because [the] choice of Delaware as a forum relates to [its] legitimate, rational concerns as [a] Delaware corporation[]." *Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009).

ii.     **Factor 2: Ionis prefers the Central District of California.**

The second factor—the defendant's forum preference—points toward California but counts for little. In the Third Circuit, the defendant's preference "is not given the same weight as Plaintiff's preference." *I.V. I*, 842 F. Supp. 2d at 755. This rule applies even when both parties "are headquartered on the West Coast . . . ." *Id.* This factor thus weighs only slightly for transfer.

iii.    **Factor 3: The claims did not arise in California.**

In patent cases, the third factor, where the claim "arose," depends on where the accused product is researched, designed, developed, or manufactured. *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012). This factor is "typically neutral" when an accused

infringer operates nationally. *Id.*

Here, the center of gravity is Wisconsin—over 1,500 miles from the Central District of California. Arrowhead conceived and researched plozasiran in Wisconsin, and continues to invest in facilities to commercially manufacture it there. (Bormett Decl. ¶¶ 6, 7, 12.) Its supply chain to date in support of FDA approval also remains anchored in Wisconsin, with the final stops in Pennsylvania (packaging) and Kentucky (storage) before distribution. (*Id.* ¶¶ 5, 10–11, 15.) California's role is more peripheral: certain clinical and commercial functions are managed by employees based at Arrowhead's headquarters in Pasadena (though Arrowhead's National Sales Director, who is the head of Arrowhead's sales force team, works remotely from Michigan). (*Id.* ¶ 15.) Contrary to Ionis's presumptions, plozasiran's "roots" lie in Wisconsin, making this factor at best neutral. Moreover, upon FDA approval, Arrowhead intends to sell plozasiran across the country, including in Delaware. (*Id.* ¶ 14.) That supports this factor's neutrality. The Delaware market is no more relevant than any other market. *Dialect*, 2024 WL 1328908, at *2 (Williams, J.).

### iv.    Factor 4: The parties' resources and Delaware's accessibility weigh against transfer.

The fourth *Jumara* factor considers the forum's convenience for the parties, accounting for their locations and financial resources. 55 F.3d at 879. This factor weighs against transfer—or at most is neutral.

When a company like Ionis "chooses to incorporate in Delaware," it "cannot complain once another corporation brings suit against it in Delaware." *Mallinckrodt*, 670 F. Supp. 2d at 357. A "multi-billion-dollar Delaware corporation" faces only "minimal, at best," inconvenience litigating in Delaware. *Dialect*, 2024 WL 1328908, at *3. Finding inconvenience for such a party generally requires some "unique or unexpected burden." *I.V. I*, 842 F. Supp. 2d at 756. Ionis cites none. And this rule applies with special force here: Both parties are large Delaware corporations

12

(which Ionis omits from its opening brief), *and* the claim arises in Wisconsin. (*See* Factor 3, § V.A.1.b.iii, *supra*.) Ionis also miscasts Delaware as inconvenient for Arrowhead. (D.I. 14 at 17.) In fact, Delaware is more accessible for many Arrowhead employees—with more than half living in Wisconsin. (Bormett Decl. ¶ 17; Ex. 1 at 31.) This factor therefore weighs against transfer.

### v.    Factor 5: Witness convenience is neutral.

Ionis misconstrues this factor, which concerns non-party witnesses' availability for trial, not the parties' current employees. *I.V. I*, 842 F. Supp. 2d at 757–58. As an initial matter, the infrequency of trial diminishes this factor's weight significantly. *Id.* at 758 (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)).

On the merits, Ionis misreads the case it cites. It has the burden to "come forward" with "specificity" as to: (1) third-party witnesses; (2) their testimony; and (3) some non-speculative reason as to why they would "actually" be unavailable for trial. *Papst*, 126 F. Supp. 3d at 441–43. A "general allegation" that witnesses are necessary without specifically describing their testimony is fatal to this factor. *Id.* at 442. Nor does this factor turn on who musters "a longer list of possible witnesses . . . ." *Id.* at 441. Moreover, lack of subpoena power does not make a witness "actually" unavailable because "[e]very witness' deposition testimony can be compelled by some court." *I.V. I*, 842 F. Supp. 2d at 757 (citing Fed. R. Civ. P. 45(b)(2)).

Falling short of that burden, Ionis identifies only two *non-party* witnesses. (*See* D.I. 14 at 18; D.I. 15-1, Exs. P–Q.) Both live outside the Central District (one in Palo Alto, CA, and another in San Diego, CA). Ionis omits any "specific" testimony they would provide, much less their importance to this dispute. (D.I. 14 at 18.) Ionis also fails to provide a reason—other than speculation—as to why they would "actually be unavailable for trial." *Papst*, 126 F. Supp. 3d at 441. Absent these showings, at most, this factor is neutral. *See Genedics, LLC v. Meta Co.*, 2018 WL 417950, at *7 (D. Del. Jan. 12, 2018) (holding factor five neutral where defendant proffered no

reason on the record why a Massachusetts non-party inventor would refuse to travel to the Northern District of California).

Most relevant witnesses remain employed by Arrowhead, including personnel in Wisconsin and Pasadena, California. (Bormett Decl. ¶¶ 15, 17.) A few former employees are believed to reside in San Diego, while another resides in Charleston, South Carolina. (*Id.* ¶ 16.) Many relevant witnesses are still within Arrowhead's control, and others are located well outside either forum. Given the narrow scope of this factor, the ease of presenting testimony by modern means, and the location of relevant witnesses around the country, this factor is neutral.

### vi.    Factor 6: The location of records is at best neutral.

The location of books and records matters only if they "could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Technological advances have largely eroded the significance of this factor. *Dialect*, 2024 WL 1328908, at *3 (explaining technology has "greatly diminished" this factor). The movant, Ionis, bears the burden to show that specific records "could not be produced in the alternative forum"—here, the Central District of California. *See id.*

Arrowhead's records are located in Madison and Verona, Wisconsin, and in San Diego and Pasadena, California—but all can be produced electronically in any forum. (Bormett Decl. ¶¶ 18–21.) Ionis identifies no evidence to the contrary. Indeed, Ionis's key authority on this matter, *In re Genentech, Inc.*, included the burden of transporting *physical* documents from *Europe* to the United States. 566 F.3d 1338, 1345–46 (Fed. Cir. 2009). Because Ionis has not met its burden to show similar circumstances here, this factor weighs against transfer or, at a minimum, is neutral.

### vii.    Factor 8: Practical considerations favor Delaware.

This factor examines which forum can handle the case more easily, efficiently, and inexpensively, while considering both the relative stage of the proceedings in each forum and the typical time to trial. *See Cisco*, 2022 WL 16921988, at *7 (Williams, J.) (noticing second-filed court's

14

more developed proceedings as a factor that "expedite[s] trial").

Because both cases are at the same stage and Delaware moves to trial months faster, practical considerations favor keeping the case here. This case and its California cousin both remain in their earliest stages.[5] In contrast, time-to-trial favors Delaware. According to Lex Machina, since 2020 patent cases in this Court have reached trial about four and a half months faster than in the Central District of California. That is an average of about 2 years and 9 months (993 days) here versus 3 years and 1½ months (1,136 days) there—a 143-day difference. (Ex. 2.) Keeping the case here is the more expeditious choice. This factor thus weighs against transfer.

Ionis notes that travel to Delaware for a potential trial weighs in favor of transfer. (D.I. 14 at 19.) Ionis's duplicative convenience arguments should not be double-counted under this or any other factor. *Cisco*, 2022 WL 16921988, at *6. Those arguments are thus irrelevant here (if the Court considers them elsewhere). *Id.*

### viii.    Factor 9: Delaware's docket is less congested.

Arrowhead and Ionis agree that the court congestion factor turns on the most recent official statistics.[6] But those statistics tell a different story than Ionis suggests. The Judicial Caseload Report calculates "weighted filings" per judgeship—a metric adjusting for both volume and complexity, which this Court has relied on. *See id.* at *7 & n.5. As of June 2025, judges in the Central District of California are busier, with each judge managing **731 weighted cases**, compared to **618** in Delaware (Exs. 3–4 )—a disparity that favors keeping the case in Delaware. Ionis ignores this and cites time-to-trial data in *all* civil cases. (D.I. 14 at 20; D.I. 15-1, Ex. U.) Even if time-to-trial

---

[5] Arrowhead filed this case on September 10, 2025, and Ionis filed its case in California the next day. (D.I. 1; Dkt. No. 1, *Ionis Pharmaceuticals, Inc. v. Arrowhead Pharmaceuticals Inc.*, No. 2:25-cv-08609 HDV (AGRx) (C.D. Cal. Sept. 11, 2025); D.I. 15-1, Ex. B.)

[6] *U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics*, U.S. Courts (June 30, 2025), available at https://www.uscourts.gov/data-news/data-tables/2025/06/30/federal-court-management-statistics/n-a-1. (Ex. 3.)

matters under Factor Nine (it should not), Arrowhead's more specific, patent-focused data controls on that issue. (*See* Factor 8, § V.A.1.b.vii. *supra*; Ex. 2.) This factor therefore weighs strongly against transfer.

> ### ix.    Factor 10: Wisconsin supplies any "local interest."

Arrowhead agrees that the local interest lies where the drug was developed, as that was the reason the court favored North Carolina's interest in *In re Hoffmann-La Roche Inc.* 587 F.3d 1333, 1335, 1338 (Fed. Cir. 2009) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317–18 (5th Cir. 2008)). Here, however, Arrowhead researched plozasiran and conducted its initial development in Wisconsin. (Bormett Decl. ¶ 6.) Arrowhead also hopes to be capable of commercially manufacturing plozasiran in Wisconsin in the future after FDA approval—not Pasadena. (*Id.* ¶ 4.) This factor is therefore neutral.

* * *

In sum, **five** factors weigh against dismissal or transfer, and at most **one** favors it—far short of the showing Ionis must make. Even if the Court viewed Arrowhead's suit as anticipatory (which it should not), the *Jumara* factors preclude dismissal because they favor Delaware. *See Micron*, 518 F.3d at 904.

> ### 2.    Exercising jurisdiction is consistent with the Declaratory Judgment Act's objectives.

Exercising jurisdiction here, contrary to Ionis's arguments, is fully consistent with the Declaratory Judgment Act's objectives. Arrowhead does not dispute that the Declaratory Judgment Act aims to provide "relief from uncertainty and delay." (D.I. 14 at 8.) But Ionis improperly reads the cases it cites (*Id.* at 7–8) to suggest that district courts should only exercise jurisdiction when a patentee threatens suit and then delays filing. *EFI*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (holding that even when a patentee sets a firm deadline and venue, the accused may sue *first* to "remove

16

itself from the shadow of threatened infringement litigation."); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (explaining that the Declaratory Judgment Act's purpose is to afford "relief from uncertainty and delay," but does not impose any specific delay requirement); *EchoStar Satellite L.L.C. v. Finisar Corp.*, 515 F. Supp. 2d 447, 452 (D. Del. 2007) (purpose of the Declaratory Judgment Act is "relief from uncertainty and delay," but "[w]hen there is an actual controversy and a declaratory judgment would settle the dispute, the declaratory judgment is typically not subject to dismissal"); *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673–74 (Fed. Cir. 1991) (addressing unique harm from delay where ongoing business losses made further waiting unfair, not creating rule that jurisdiction should depend on any period of delay).

Arrowhead filed this suit to achieve certainty, not to "forum shop." The core requirement of "forum shopping" is an attempt to dodge an expected loss or capture a known judicial edge. *See TSMC*, 2014 WL 7251188, at *10–12. Ionis shows none of that here—no prior defeat, no hostile judge, no tactical motive for Delaware. Its claim boils down to this: Arrowhead knew Ionis preferred California but filed in Delaware first. Ionis leans on *TGL Golf*, 2025 WL 1638353, but that case found forum shopping only where the declaratory plaintiff filed first to avoid litigating on its opponent's "home turf." *Id.* at *3. Moreover, for reasons discussed elsewhere, Arrowhead could not have filed this case in the Central District of California, as that district is not Ionis's home—it is headquartered in the Southern District. Arrowhead had two plainly proper forum choices: Ionis's home forum in the Southern District of California or the District of Delaware, where both parties are incorporated. Choosing between legitimate venues is not forum shopping; it is a lawful exercise of filing discretion. *See Mallinckrodt*, 670 F. Supp. 2d at 356–57.

Ionis applies the wrong law when it asserts that its later California suit should take

precedence because it is the natural plaintiff and its suit encompasses the same issues. (*See* D.I. 14 at 9–10.) Federal Circuit precedent governs, not the regional circuit's. *Contec*, 952 F.3d at 1362. *TGL Golf*, which Ionis cites (D.I. 14 at 9–10), rests on Sixth Circuit precedent outside the patent context. 2025 WL 1638353, at *5 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Under Federal Circuit precedent, a first-filed declaratory action to resolve infringement uncertainty is presumptively proper, and Ionis's argument collapses into the ordinary first-to-file analysis.

Finally, no settlement talks were underway here that Arrowhead's filing could have discouraged. (*See* D.I. 14 at 10.) *HPF, LLC v. Nu Skin Enters., Inc.*, 1999 WL 782573, at *2–3 (E.D. Pa. Sept. 28, 1999) (transferring declaratory judgment action where the declaratory plaintiff led the patentee to believe settlement talks were still underway, then filed suit the day its response was due); *see also Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 70 (D.R.I. 1999) (declaratory plaintiff sued after promising to respond to a negotiation letter); *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F. Supp. 144, 146 (D. Mass. 1993) (declaratory plaintiff sued after "promis[ing]" to reply to multiple invitations to negotiate a license). Cases concluding that exercising jurisdiction would "reward conduct that undermines the sound policy of promoting settlements," (D.I. 14 at 10 (quoting *Nortek*, 36 F. Supp. 2d at 70)), are not relevant here.

### B.    The Court Should Deny Ionis's Motion to Transfer to C.D. Cal.

The decision to transfer proceeds in two steps. First, a court decides whether the present case "might have been brought" in the transferee district—here, the Central District of California. 28 U.S.C. § 1404(a); *Shutte*, 431 F.2d at 24. If that threshold requirement is met, this Court would then weigh the previously analyzed *Jumara* factors. *Roku*, 2021 WL 5299247, at *2.

### 1.    Arrowhead could not have brought this action in C.D. Cal.

Venue is proper only in a district where at least one of three things is true: (1) the defendant

18

resides there (§ 1391(b)(1)); (2) a substantial part of the events giving rise to the claim occurred there (§ 1391(b)(2)); or (3) relevant property is located there (§ 1391(b)(2)). 28 U.S.C. §§ 1391(b)(1)–(2). Ionis bears the burden of showing that the Central District of California satisfies one of those criteria. *See In re SK hynix Inc.*, 847 F. App'x 847, 852 (Fed. Cir. 2021).

Ionis concedes that it does not "reside" in the Central District of California under § 1391(b)(1). (D.I. 14 at 14.) In a declaratory action for patent noninfringement, the "events giving rise to the claim" are the allegedly infringing acts involving the accused product—its manufacture, use, or sale. *Dex Prods., Inc. v. Houghteling*, 2006 WL 1751903, at \*7 (N.D. Cal. June 23, 2006) (citing *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982)). Under the same subsection, the "property that is the subject of the action" refers to the accused product itself. *A-V Fluids, Inc. v. Jana Media, LLC*, 2021 WL 5155698, at \*9 (S.D. Tex. Mar. 22, 2021). Thus, it is the location of manufacture, use, or sale of Arrowhead's product that defines the inquiry under this test. *See Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 484 (D.N.J. 2009).

Neither substantial events giving rise to this claim nor relevant property are located in the Central District of California. In support of FDA approval, Arrowhead's accused product, plozasiran, is currently manufactured in Colorado, filled and finished in pre-filled syringes in the Southern District of California, shipped to Pennsylvania for packaging, and then will be moved to Kentucky for commercial distribution and storage. (Bormett Decl. ¶¶ 8–11.) Moreover, Arrowhead is investing in its Verona manufacturing facility so that it can commercially manufacture plozasiran in Wisconsin if it receives FDA approval. (*Id.* ¶¶ 4, 7, 12.) In short, plozasiran is not located in the Central District of California and has not yet been sold because it remains under FDA review. (*Id.* ¶ 13.)

Ionis's argument that its cease-and-desist letters sent into the Central District of California

establish venue under § 1391(b)(2) is misplaced. (D.I. 14 at 13–15.) Sending two letters into a forum does not constitute a "substantial part of the events giving rise to the claim." *See, e.g.*, *Pro Sports*, F. Supp. 2d at 484 (denying dismissal for improper venue because the accused product was manufactured, inventoried, and sold in the transferor forum).

Both cases Ionis relies on for this point do not support its theory that sending correspondence into a forum creates venue under § 1391(b)(2): *Shenzhen City Sahnu Tech. Co. v. Albanese*, 2023 WL 7167009, at *2 (E.D.N.Y. Oct. 31, 2023) and *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1203 (Fed. Cir. 2018) relied on personal-jurisdiction principles, not the "substantial events" test.

Because Arrowhead could not have brought this action in the Central District of California, transfer there would be improper. The only districts where both personal jurisdiction and venue align are the Southern District of California and the District of Delaware. Arrowhead chose Delaware.

### 2.    The *Jumara* factors do not "strongly" weigh in favor of transfer.

If the Court determines that the Central District of California is a proper transferee forum—and it should not—the *Jumara* factors analyzed in § V.A.1.b, *supra*, apply equally here and compel the same result: transfer is unwarranted. *See Roku*, 2021 WL 5299247, at *2 (denying transfer after concluding declaratory action could not have been brought in the transferee district).

## VI.    CONCLUSION

For the above reasons, Arrowhead respectfully requests that Ionis's motion be denied.

Date: October 20, 2025

**FISH & RICHARDSON P.C.**

By: _/s/ Susan E. Morrison_
Susan E. Morrison (#4690)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Email: morrison@fr.com

Louis E. Fogel
FISH & RICHARDSON P.C.
150 N. Riverside Plaza, Ste. 2820
Chicago, IL 60606
Telephone: (312) 278-2700
Email: fogel@fr.com

Megan A. Chacon
Madelyn S. McCormick
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Email: chacon@fr.com
mmccormick@fr.com

*Attorneys for Plaintiff*
*Arrowhead Pharmaceuticals, Inc.*