IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARROWHEAD PHARMACEUTICALS, INC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 25-1130 (GBW)<br>) |
| IONIS PHARMACEUTICALS, INC., | )<br>) |
| Defendant. | ) |

**DEFENDANT IONIS PHARMACEUTICALS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

OF COUNSEL:

Jessamyn S. Berniker
Thomas S. Fletcher
Kathryn S. Kayali
Michael Xun Liu
Alexander Song
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5000

October 27, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendant*

TABLE OF CONTENTS

Page

I. THIS COURT SHOULD DISMISS ARROWHEAD'S COMPLAINT ......................... 1

    A. Arrowhead Misstates the Law on Anticipatory Suits ........................................... 1

    B. Exercising Jurisdiction Would Not Advance the DJA's Objectives .................. 4

    C. The Convenience Factors and *Jumara* Factors Favor Dismissal. ....................... 5

        1. Factors 1 & 2: The choices of the parties favor C.D. Cal. ....................... 5

        2. Factor 3: The infringement claims arose in C.D. Cal. ............................ 6

        3. Factor 4: The convenience of the parties favors C.D. Cal. .................... 7

        4. Factor 5: The location of the witnesses favors C.D. Cal. ....................... 8

        5. Factor 6: The location of the books and records favors C.D. Cal. ............................................................................................................ 9

        6. Factor 8: Practical considerations favor C.D. Cal. .................................. 9

        7. Factor 9: C.D. Cal. is less congested. ...................................................... 9

        8. Factor 10: The "local interest" favors C.D. Cal. .................................. 10

II. ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED .......................... 10

III. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

*Affymetrix v. Synteni*
    28 F. Supp. 2d 192 (D. Del. 1998)...................................................................................9

*Allen Med. Sys. v. Mizuho Orthopedic*
    2022 WL 1046258 (D. Del. Apr. 7, 2022).......................................................................10

*Angiodynamics v. Vascular Sols.*
    2010 WL 3037478, *3 (D. Del. July 30, 2010) ................................................................7

*Blackbird Tech v. TuffStuff Fitness*
    2017 WL 1536394 (D. Del. Apr. 27, 2017).......................................................................6

*Cisco Sys. v. Ramot at Tel Aviv Univ.*
    2022 WL 16921988 (D. Del. Nov. 14, 2022) ........................................................1, 3, 4, 5

*Commc'ns Test Design v. Contec*
    952 F.3d 1356 (Fed. Cir. 2020)................................................................................2, 5, 8

*Dialect v. Google*
    2024 WL 1328908 (D. Del. Mar. 28, 2024) ..............................................................6, 8, 9

*Gen. Sci. v. Den-Mat Hldgs.*
    2021 WL 4622548 (D. Del. Oct. 7, 2021) ......................................................................10

*Honeywell v. UAW*
    502 F. App'x 201 (3d Cir. 2012) ......................................................................................4

*In re DVI*, 2004 WL 1498593, *2 (D. Del. June 23, 2004) .............................................9

*In re Hoffman-La Roche*
    587 F.3d 1333 (Fed. Cir. 2009)......................................................................................10

*In re Link_A_Media*
    662 F.3d 1221, 1223-24 (Fed. Cir. 2011) .....................................................................8, 9

*Intellectual Ventures v. Altera*
    842 F. Supp. 2d 744, 758 (D. Del. 2012).........................................................................8

*Ithaca Ventures v. Nintendo*
    2014 WL 4829027 (D. Del. Sept. 25, 2014).................................................................7, 8

*Linex Techs. v. Hewlett-Packard*
    2013 WL 105323 (D. Del. Jan. 7, 2013)..........................................................................6

*Memory Integrity v. Intel*
   2015 WL 632026 (D. Del. Feb. 13, 2015) ...............................................................................5

*Mentor Graphics v. Quickturn Design*
   77 F. Supp. 2d 505 (D. Del. 1999) ........................................................................................6

*Nexans v. Belden*
   966 F. Supp. 2d 396 (D. Del. 2013) ..................................................................................2, 3

*OpenTV v. Netflix*
   2014 WL 1292790 (D. Del. Mar. 31, 2014) ..........................................................................6

*Papst Licensing v. Lattice Semiconductor*
   126 F. Supp. 3d 430 (D. Del. 2015) .................................................................................6, 8

*Roku v. AlmondNet*
   2021 WL 5299247 (D. Del. Nov. 15, 2021) ......................................................................2, 3

*Serco Servs. v. Kelley*
   51 F.3d 1037 (Fed. Cir. 1995) ...............................................................................................2

*Shenzhen City Sanhu Tech v. Albanese*
   2023 WL 7167009 (E.D.N.Y. Oct. 31, 2023) .....................................................................10

*TGL Golf Holdings v. LA Golf P's*
   2025 WL 1638353 (D. Del. June 9, 2025) ........................................................................1, 4

*Trustco Bank v. Automated Transactions*
   933 F. Supp. 2d 668 (D. Del. 2013) ......................................................................................3

*TSMC Tech. v. Zond*
   2014 WL 7251188 (D. Del. Dec. 19, 2014) ......................................................................2, 3

*Woodbolt Distrib. v. Natural Alts.*
   2013 WL 247041 (D. Del. Jan. 23, 2013) .........................................................................1, 8

## STATUTES AND RULES

28 U.S.C. § 1391 ..............................................................................................................................10

28 U.S.C. § 1404 ..............................................................................................................................10

Federal Rule Civil Procedure 45 .......................................................................................................8

Arrowhead fails to identify *any* connection between this dispute and Delaware: not a single witness or party facility, nor the origin of the infringement. Arrowhead contends infringing acts occur in Wisconsin where plozasiran is made—not in Delaware. But the case is about a method of treatment patent, so where the product is made is beside the point. Arrowhead's decision-making, regulatory submissions (including its proposed label), and commercial activities form the basis of the infringement claims, and Arrowhead does not dispute that these occur at its Pasadena headquarters in California's Central District. Nor does Arrowhead dispute that both parties' headquarters and many key witnesses are located within or close to the Central District. The weight of authority and common sense dictate that this dispute be resolved in California.

Unable to explain why this case should proceed in Delaware, Arrowhead leans heavily on the "first-to-file" rule. But that rule has little force where the plaintiff filed suit "on receipt of specific, concrete indications that a suit by the defendant was imminent," *i.e.* an anticipatory suit. *Cisco Sys. v. Ramot at Tel Aviv Univ.*, 2022 WL 16921988, *4 (D. Del. Nov. 14, 2022). This case fits like a glove within the definition of an anticipatory suit. Such cases are routinely dismissed, *see* Br. 5-7, so Arrowhead invents a requirement to show "maneuvering designed to 'affirmatively mislead.'" Op. 6. There is no such requirement, and this Court should reject Arrowhead's attempt to impose one. This Court should exercise its discretion to dismiss or transfer this case.

I.  **This Court Should Dismiss Arrowhead's Complaint**

   A.  **Arrowhead Misstates the Law on Anticipatory Suits**

It is well-established that "a suit is anticipatory . . . if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Cisco*, 2022 WL 16921988, at *4. This articulation of what constitutes an "anticipatory suit" has been uniformly adopted by Delaware district courts, including in cases Arrowhead cites. *TGL Golf Holdings v. LA Golf P's*, 2025 WL 1638353, *3 (D. Del. June 9, 2025); *Woodbolt Distrib. v.*

1

*Natural Alts.*, 2013 WL 247041, *4 (D. Del. Jan. 23, 2013); *Roku v. AlmondNet*, 2021 WL 5299247, *4 (D. Del. Nov. 15, 2021); *TSMC Tech. v. Zond*, 2014 WL 7251188, *9 (D. Del. Dec. 19, 2014); *Nexans v. Belden*, 966 F. Supp. 2d 396, 404 (D. Del. 2013). And it is consistent with the Federal Circuit's guidance. *Commc'ns Test Design v. Contec*, 952 F.3d 1356, 1363 (Fed. Cir. 2020) (suit filed "in anticipation of [patentee's] impending infringement suit" is anticipatory).

Arrowhead does not and cannot dispute that its suit is "anticipatory" under this rubric. So it asks this Court to cast aside this litany of precedent and adopt a test that it fabricated from whole cloth, requiring both "timing" and unfair "tactics" such as "maneuvering designed to 'affirmatively mislead.'" Op. 6. The test has *never* been endorsed by any court, and this Court should reject it.

Notably, Arrowhead's proposal would directly contradict the Federal Circuit's guidance. In *Serco Servs. v. Kelley*, the court declined to limit anticipatory suits to only those "motivated by forum shopping or those filed in derogation of an existing agreement to refrain from filing suit." 51 F.3d 1037, 1039 (Fed. Cir. 1995). Arrowhead dismisses *Serco* as "thirty years old and pre-dat[ing] the modern *Contec* framework." Op. 7, fn. 3. But the Federal Circuit in *Contec* did not abrogate *Serco*, which remains controlling law. *Contec,* 952 F.3d at 1362. It cited *Serco* approvingly in *Contec*, relying on *Serco*'s holding that courts may dismiss a first-filed action based on "considerations of judicial and litigant economy." *Id.* And *Contec* itself explains that a suit is anticipatory if it was filed "in anticipation of [an] impeding infringement suit," irrespective of whether there was a "nefarious motive" to interfere with negotiations. *Id.* at 1363.

*TSMC*, Arrowhead's lead case, also did not hold that a declaratory judgment action is only anticipatory if the plaintiff "affirmatively mislead[s]" the defendant. 2014 WL 7251188, at *8; *see* Op. 6-7. Like other Delaware courts, *TSMC* held that a suit is anticipatory if it was filed "on receipt of specific, concrete indications that a suit by the defendant was imminent"—precisely the

2

facts here. *Id.* at *8. Using that test, the court in *TSMC* found the suit "undoubtedly anticipatory," but allowed it to proceed because, before it was filed, the parties had already been "locked in intellectual property disputes," with both taking "tough, but fair steps in order to fully protect their rights." *Id.* at *10. The facts here are not analogous. Moreover, the *TSMC* patentee had only two employees and identified only one witness who would have to travel to Delaware to testify. *Id.* at *16-17. By contrast, *all* of the witnesses in this case would have to travel to Delaware to testify.

None of the other cases that Arrowhead cites support its position either. In *Nexans*, the Court reiterated that a suit is anticipatory if there are "specific, concrete indications that a suit by the defendant was imminent." 966 F. Supp. 2d at 404. Applying this standard, the court ultimately found the suit was not anticipatory because "[t]here is no evidence of record that Nexans had received any concrete indications of an imminent lawsuit." *Id.* Relying on the same test, the court in *Roku* did not find the suit anticipatory because there was insufficient indication that "Roku filed suit because it believed Defendants' infringement suit to be imminent." 2021 WL 5299247, at *4. In neither case did the Court suggest that the plaintiff must "affirmatively mislead" for its suit to be anticipatory. Finally, *Trustco Bank v. Automated Transactions* did not address the standard for anticipatory suits but found that dismissal or transfer was unwarranted in part because the Delaware court was already familiar with the patents-in-suit. 933 F. Supp. 2d 668, 673 (D. Del. 2013). In short, there is no authority for Arrowhead's assertion that an anticipatory suit must be premised on the declaratory judgment plaintiff's "manipulative" or "unfair" behavior.[1]

Under the controlling standard, Arrowhead's suit is plainly anticipatory. The first-to-file rule does not apply, and the Court should exercise its discretion to dismiss this case because it does

---

[1] Although not required to be anticipatory, Arrowhead's race to file first "for the sole purpose of selecting its chosen forum" is certainly unfair and an "abuse" of the Declaratory Judgment Act. *Cisco*, 2022 WL 16921988, at *5.

3

not comport with the Declaratory Judgment Act. As discussed extensively in Ionis's opening brief, courts *routinely* dismiss cases in this posture. *See* Br. 6-7. Here, Arrowhead filed this case in Delaware just hours before it knew Ionis would sue in the Central District of California—home to Arrowhead's headquarters and the infringing conduct, convenient to the key witnesses and documents, and near Ionis's own headquarters. Meanwhile Delaware has no connection to this dispute. The facts overwhelmingly favor dismissal.

### B.     Exercising Jurisdiction Would Not Advance the DJA's Objectives

Exercising jurisdiction here would not further the Declaratory Judgment Act's purposes.

*First*, Arrowhead's assertion that it filed this action to achieve certainty or to "clear the air" rings hollow. Op. 5. Arrowhead filed suit on the *day before* it knew that Ionis would sue in Arrowhead's home turf. Arrowhead did not need to file this case to obtain "certainty" because it knew that Ionis was going to file its lawsuit a few hours later. Instead, Arrowhead raced to file its declaratory judgment action before Ionis to try to avert Ionis's choice of forum. This Court has emphasized that the Declaratory Judgment Act should not be used to reward this type of race to the courthouse. *Cisco*, 2022 WL 16921988, at *5; *TGL Golf*, 2025 WL 1638353, at *5.

*Second*, as articulated in *TGL Golf*, the policy underlying the Declaratory Judgment Action is not present when there is parallel litigation filed by the natural plaintiff. *Id.* Even though *TGL Golf* was decided under Sixth Circuit law, the decision reflects the common sense policy that when there is a pending lawsuit filed by the natural plaintiff, allowing a mirror image declaratory judgment action to proceed in parallel does not advance the Declaratory Judgment Act's goals of promoting certainty or avoiding delay. *See also Honeywell v. UAW*, 502 F. App'x 201, 206 (3d Cir. 2012) (affirming the district court's "deference to the second-filed action for coercive relief").

*Third*, Arrowhead contends that it was not forum shopping because it was not "attempt[ing] to dodge an expected loss or capture a known judicial edge." Op. 17. But Arrowhead fails to

4

articulate any practical reason for selecting Delaware, where there are no witnesses, facilities or any other connections to the dispute. It could have sued in the Central or Southern Districts of California, either of which would have been more practical. *See Infra* § II, Op. 17. On these facts, the Court can reasonably infer that Arrowhead chose Delaware for a tactical advantage.

*Fourth*, Arrowhead's assertion that the parties were not engaged in any ongoing settlement discussions misses the point. Ionis reached out to Arrowhead to try to initiate such discussions. D.I. 15, Ex. A. If patentees cannot even try to attempt settlement discussions without risking the loss of their desired forum, even where they give a specific, concrete indication that a suit is imminent, then they will be forced to sue first and negotiate later. The Declaratory Judgment Act was not intended to promote such counter-productive behavior. The Court should decline to exercise jurisdiction for this additional reason. *Cisco*, 2022 WL 16921988, at *5.

        **C.**    **The Convenience Factors and *Jumara* Factors Favor Dismissal.**

Arrowhead's argument that the convenience factors "either point to Delaware or are neutral" strains credulity. Op. 10. As an initial matter, Arrowhead incorrectly imports the heightened requirements for a transfer motion into its motion to dismiss analysis. There is no requirement that the *Jumara* factors "strongly" weigh in favor of dismissing an anticipatory suit. Courts only need to offer a "sound reason" why it would be "unjust or inefficient to continue the first-filed action," *Contec*, 952 F.3d at 1362, a standard that is easily satisfied here. Regardless, the convenience factors clearly favor hearing this case in the Central District under either standard.

        **1.**    **Factors 1 & 2: The choices of the parties favor C.D. Cal.**

A plaintiff's forum preference "weighs minimally" when, as here, the plaintiff has "no facilities, operations, employees, or presence in Delaware." *Memory Integrity v. Intel*, 2015 WL 632026, *3 (D. Del. Feb. 13, 2015). Delaware courts often find the plaintiff's venue preference to be outweighed by other considerations when neither party has a principal place of business in the

5

state. *Blackbird Tech v. TuffStuff Fitness*, 2017 WL 1536394, *3 (D. Del. Apr. 27, 2017); *OpenTV v. Netflix*, 2014 WL 1292790, *2 (D. Del. Mar. 31, 2014); *Linex Techs. v. Hewlett-Packard*, 2013 WL 105323, *1, *3 (D. Del. Jan. 7, 2013); *Mentor Graphics v. Quickturn Design*, 77 F. Supp. 2d 505, 509 & n.6 (D. Del. 1999). Arrowhead fails to address, let alone overcome, the weight of this authority. In *Dialect v. Google*, cited by Arrowhead, this Court *agreed* that a plaintiff's preference is "entitled to less deference" when it is "not at home in Delaware," declined to afford its choice "paramount consideration" for that reason, and transferred the suit to California because the other factors outweighed plaintiff's preference. 2024 WL 1328908, *2 (D. Del. Mar. 28, 2024).

It is also clear that "physical proximity" to principal places of business "is a clear, legitimate basis" for Ionis's forum preference. *Papst Licensing v. Lattice Semiconductor*, 126 F. Supp. 3d 430, 439 (D. Del. 2015). Because Ionis's preference should be given full weight, and Arrowhead's only minimal weight, these factors favor the Central District of California.

### 2. Factor 3: The infringement claims arose in C.D. Cal.

There is no dispute that the infringement claims did not "arise" in Delaware. They arose in California. "Ionis's action for infringement arises from Arrowhead's business decision to commercialize and seek regulatory approval for plozasiran, which will induce and contribute to infringement of Ionis's '333 patent," and these decisions were "made in the Central District of California," where Arrowhead's headquarters and executives are. Op. 11, 17. *Arrowhead does not dispute these facts*. As Ionis explained—and Arrowhead also does not dispute—Arrowhead's key commercial, financial, medical, and regulatory decision-makers are in Pasadena, and that is where it announced its decision to commercialize plozasiran. Br. 11, 14; D.I. 15, Exs. F-L, W-X.

Arrowhead conspicuously avoids discussing these facts and instead tries to focus on its plozasiran manufacturing in Wisconsin. How that supports a case in Delaware is mystifying. In any event, courts in this district have recognized that a patentee's claims "'arise' where the

6

products are marketed" even if "the products are not . . . manufactured within [that] District." *Ithaca Ventures v. Nintendo*, 2014 WL 4829027, *3 (D. Del. Sept. 25, 2014). For this reason, they have found claims to arise in the accused infringer's principal place of business. *Id.* This is particularly the case here, where Ionis is asserting willful infringement of a method of treatment patent. "[C]laims of induced infringement and willful infringement . . . implicate [the accused infringer's] knowledge and intent, and therefore 'arise' where the products are marketed." *Id; see also Angiodynamics v. Vascular Sols.*, 2010 WL 3037478, *3 (D. Del. July 30, 2010) (indirect infringement claim largely arose where "inducing instructions" were drafted).

It is therefore not "peripheral" that, as Arrowhead acknowledges, "certain clinical and commercial functions are managed by employees based at Arrowhead's headquarters in Pasadena." Op. 12. These functions, along with Arrowhead's executive and regulatory teams—all of which are in Pasadena—are responsible for Arrowhead's decision to seek a clinical indication for FCS and commercialize plozasiran in a manner that induces and contributes to the infringement of Ionis's method of treatment patent. Br. 11. Arrowhead is, as we speak, hiring managers and directors to work in Pasadena for its imminent launch of plozasiran, further underscoring that the infringing acts are in the Central District. For example, Arrowhead is now hiring a Pasadena-based manager to: "play a pivotal role in the commercial launch of Arrowhead's leading investigational cardiometabolic medicine – Plozasiran." Ex. A; *see also* Ex. B.

Simply put, the infringement claims arose in Pasadena. Whether they *also* arose in Wisconsin because of where plozasiran is made is beside the point. Nothing supports hearing this action *in Delaware*—where Arrowhead admits the infringement did *not* arise. Op. 12.

    **3.**    **Factor 4: The convenience of the parties favors C.D. Cal.**

Arrowhead stresses that Ionis is incorporated in Delaware, but the Federal Circuit has held that "heavy reliance on the fact that [defendant] was incorporated in Delaware" in a venue analysis

is "inappropriate." *In re Link_A_Media*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (granting mandamus). Contrary to Arrowhead's assertions, *Dialect* did *not* hold that party convenience is irrelevant when the defendant is a large corporation. Although this Court found that the financial impact on Google from litigating in Delaware would be "minimal," it "[n]evertheless" concluded that this factor favored California "given the numerous high-level employees whose work would be disrupted by travel to Delaware." *Dialect*, 2024 WL 1328908 at *3. Here, it would be much more convenient for Ionis's employees (and Arrowhead's California employees) to drive to Los Angeles than to fly to Delaware. And Arrowhead offers no compelling reason why Delaware would be more convenient than California for its Wisconsin employees. *See id.* at *3 ("Dialect is in Texas and will be required to travel regardless of where this action takes place.").

### 4. Factor 5: The location of the witnesses favors C.D. Cal.

When considering whether to dismiss, the "convenience and availability of witnesses" factor includes convenience to party witnesses. *See Woodbolt Distrib.*, 2013 WL 247041, at *3. That California is home to two of the inventors, Ionis's and Arrowhead's executives, and hundreds of the parties' employees provides more than "sound reason" to dismiss. *Contec*, 952 F.3d at 1362; *see* D.I. 15, Exs. F-O, V, Y; D.I. 16, ¶¶ 4-5; D.I. 21, ¶ 17. Even if this factor were limited to non-party witnesses for the transfer analysis, it still favors California. Arrowhead identifies *no* non-party witnesses in Delaware's subpoena power. By contrast, Ionis specifically identified two California non-party witnesses (D.I. 15, Exs. P-R), and Arrowhead admits that it has "former employees with knowledge of plozasiran [that] reside" within the Central District of California's subpoena power. Op. 14; D.I. 21, ¶ 16; *see* Fed. R. Civ. P. 45(c).[2] "Their interests thus weigh

---

[2] Both *Papst* and *Intellectual Ventures v. Altera* found this factor to favor transfer even without evidence of actual unavailability. *Papst*, 126 F. Supp. 3d at 442-43; *I.V.*, 842 F. Supp. 2d 744, 758 (D. Del. 2012). Other Delaware courts held that "the interests of . . . witnesses" outside the court's

8

heavily in favor of transfer." *Affymetrix v. Synteni*, 28 F. Supp. 2d 192, 204 (D. Del. 1998).

### 5. Factor 6: The location of the books and records favors C.D. Cal.

Relevant documents are located in Pasadena and San Diego but not Delaware. D.I. 21, ¶ 18; *Dialect*, 2024 WL 1328908 at *3 (record location relevant even if producible anywhere). This factor may not be ignored even if it carries less weight. *Link_A_Media*, 662 F.3d at 1224.

### 6. Factor 8: Practical considerations favor C.D. Cal.

Arrowhead does not dispute that it is familiar with litigating in the Central District of California. *See* Br. 19, Op. 14-15. Its only argument as to why Delaware would be more practical is a Lex Machina search stating that the average time-to-trial for a patent case in this district is faster, at 2 years and 9 months. This statistic is misleading. The high volume of ANDA cases in this district skews the "average" time-to-trial data because of their 30-month deadline. In reality, this Court has been scheduling trials in further-developed non-ANDA cases for the fourth quarter of 2028—three years away. Exs. C, D. Arrowhead's "average" data is inapplicable and should not be given weight. The practical considerations favor California.

### 7. Factor 9: C.D. Cal. is less congested.

The Central District of California is less backlogged: it has fewer pending cases per judge and a lower percentage of civil cases over three years old. D.I. 15, Ex. U. These statistics reflect court congestion more accurately than Arrowhead's "weighted filings per judgeship" statistic, which does not account for the time actually taken to dispose of a filing. Courts in this district have also recognized that "weighted filing figures do not always accurately reflect the burdens imposed on district courts by patent cases, which are especially complex and time-consuming to

---

subpoena power "weigh strongly in favor of transfer" even if they "pledged" to "make themselves available for trial." *Affymetrix*, 28 F. Supp. 2d at 204-205. Deposition testimony is not an adequate substitute. *In re DVI*, 2004 WL 1498593, *2 (D. Del. June 23, 2004).

adjudicate." *Allen Med. Sys. v. Mizuho Orthopedic*, 2022 WL 1046258, *3 (D. Del. Apr. 7, 2022); *Gen. Sci. v. Den-Mat Hldgs.*, 2021 WL 4622548, *4 (D. Del. Oct. 7, 2021) (same).

### 8.  Factor 10: The "local interest" favors C.D. Cal.

Delaware has no local interest in this case. By contrast, Arrowhead cannot dispute that many of "the events that gave rise to [the] suit" occurred in California including the decision to develop plozasiran, as well as Arrowhead's commercial and clinical operations for plozasiran. *In re Hoffman-La Roche*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). This also favors dismissal.

\*      \*      \*

Arrowhead's suit is plainly anticipatory, weaponizes the Declaratory Judgment Act, and fails the convenience analysis across the board. This Court should dismiss it.

## II.  Alternatively, This Case Should Be Transferred

Arrowhead does not dispute that venue would have been proper in the Central District of California if "a substantial part of the events . . . giving rise to the claim" occurred in the district. 28 U.S.C. § 1391(b)(2); *see* Op. 19. As explained in Section I.C.2, *supra*, this standard is clearly met. Pasadena is where Arrowhead is headquartered, where its executive leadership made and announced the decision to develop, seek approval for, and commercialize plozasiran, and where its commercial, regulatory, and clinical teams for plozasiran are based. D.I. 15, Exs. D, T, W-X. *See also Shenzhen City Sanhu Tech v. Albanese*, 2023 WL 7167009, *2 (E.D.N.Y. Oct. 31, 2023) ("[V]enue [is] proper in the district . . . where the plaintiff resides."). This case could have been brought in the transferee district and, as discussed *supra* at Section I.C., the *Jumara* transfer factors strongly favor transferring this case to the Central District of California.

## III.  CONCLUSION

For the foregoing reasons, Ionis respectfully requests that this action be dismissed, or in the alternative, transferred under 28 U.S.C. § 1404(a) to the Central District of California.

OF COUNSEL:

Jessamyn S. Berniker
Thomas S. Fletcher
Kathryn S. Kayali
Michael Xun Liu
Alexander Song
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC  20024
(202) 434-5000

October 27, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

Jeremy A. Tigan (#5239)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Defendant*

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 27, 2025, upon the following in the manner indicated:

| | |
|---|---|
| Susan E. Morrison, Esquire<br>FISH & RICHARDSON P.C.<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Megan A. Chacon, Esquire<br>Madelyn McCormick, Esquire<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Suite 400<br>San Diego, CA 92130<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Louis Fogel, Ph.D.<br>FISH & RICHARDSON P.C.<br>150 N. Riverside Plaza, Suite 2820<br>Chicago, IL 60606<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Megan E. Dellinger*

Megan E. Dellinger (#5739)